454 S.E.2d 427

**STATE of West Virginia ex rel. Michele L. RUSEN, Prosecuting Attorney for Wood County, Relator,**

**v.**

**Honorable George W. HILL, Judge of the Circuit Court of Wood County, and Lisa Harder, Respondents.**

**No. 22441.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 5, 1994.

Decided Dec. 21, 1994.

Dissenting Opinion of Justice Workman Jan. 19, 1995.

Robert L. Hogan, Asst. Pros. Atty., Parkersburg, for relator.

George J. Cosenza, Cosenza & Underwood, Parkersburg, for respondent Lisa Harder.

CLECKLEY, Justice:

The relator, Michele L. Rusen, Prosecuting Attorney for Wood County, petitions this Court to issue a writ of prohibition against the respondent, the Honorable George W. Hill, Judge of the Circuit Court of Wood County, prohibiting him from dismissing the indictment in the case of *State of West Virginia v. Lisa Harder*, Case No. 93–F–81. Pursuant to Rule 16(d)(2) of the West Virginia Rules of Criminal Procedure, the respondent judge dismissed, with prejudice, an indictment charging the respondent and defendant below, Lisa Harder, with twelve counts of embezzlement. The dismissal was based on the State's partial noncompliance with a prior discovery order. We find that the respondent judge's discretion was properly exercised in this case and dismissal of the indictment was an appropriate sanction. Therefore, the writ of prohibition is denied.

### I.

Lisa Harder was indicted by the Wood County Grand Jury in May, 1993, and charged with twelve counts of embezzling money from her former employer, the Burger King restaurant in Vienna, West Virginia. Trial was originally set for June 22, 1993.

Defense counsel filed a motion for discovery pursuant to Rule 16(d)(2) of the Rules of Criminal Procedure. On June 10, 1993, the State moved to dismiss the indictment, without prejudice, on the ground that the indictment did not adequately inform the defendant of the nature of the charges against her.

A second indictment was returned by the Wood County Grand Jury in September, 1993. Trial was then set for November 8, 1993. On or about October 7, 1993, defense counsel filed a new motion for discovery. On October 19, 1993, the defendant moved to continue the trial on the ground that the State failed to respond in a timely manner to the motion for discovery; and, as a result, the defense counsel was unable to prepare for trial on the scheduled date. The State filed a response on October 29, 1993. The State, claiming the response was timely, argued that Rule 16 does not specify a particular length of time in which the State must respond to discovery requests.

The respondent judge granted the defendant's motion to continue on November 1, 1993, and rescheduled trial for the January, 1994, Term. By letter dated November 23, 1993, defense counsel informed the State that after reviewing the discovery materials, he wanted several additional documents. The additional documents requested were various kinds of reports, including sales synopses, sales reports, voids, tax reports, and a manual explaining the operation of the computer/cash register. The State's attorney orally agreed to provide the requested documentation.[1] When the January, 1994, Term of court began, the defendant's trial was scheduled for March 21, 1994. As of February 4, 1994, the State had not acquired the requested documents from Burger King.

On March 8, 1994, the defendant filed the following motions: (a) a motion to compel the State to deliver the documents listed in the February 15, 1994, order; and (b) a motion to dismiss the indictment or, in the alternative, to continue the trial. On March 11, 1994, a hearing was held on the defendant's motions. The State advised the circuit court that the documentation requested was still in the possession of Burger King. Additionally, the State informed the circuit court that the investigating officer was instructed to obtain the documentation, but there was a misunderstanding and Burger King provided the same information that was previously disclosed. The State indicated its intentions to issue a subpoena *duces tecum* to procure the necessary documents.

The circuit court directed that the requested documentation be presented to defense counsel within ten days; and, if the information was not provided, the case would be dismissed. The State was advised that if the documents were provided, the case would be continued to the May, 1994, Term of court. On March 21, 1994, the State maintains that it served what it believed were all the requested documents. The State also claims that it was not advised of any alleged defi-

---

1. Later the defendant and the State executed an Agreed Order, wherein the Assistant Prosecuting Attorney agreed to produce the documents on or before February 28, 1994.

ciencies in the information provided until April 27, 1994, when the defendant renewed her motion to dismiss. In that motion, the defendant alleged the State had failed to provide several of the requested reports and a number of the reports provided were illegible.

On May 4, 1994, the circuit court held a hearing on the defendant's motion. The State argued that it had supplied a substantial amount of the information provided and that the defendant would not be prejudiced because the new trial date would be set on arraignment day at the beginning of the May, 1994, Term. The Assistant Prosecutor, Charles P. Houdyschell, attempted to reassure the court that the State was not attempting to conceal information or mislead the defense. The circuit court was not persuaded and stated: "[I]f they [Burger King] are not interested enough to provide the Prosecuting Attorney with the information that the Prosecuting Attorney demands of them, their case will be dismissed. So ordered."

The State filed a motion to reconsider in response to the Judge's order dismissing the case with prejudice. The State asserted in the motion that: (a) much of the information requested did not exist; (b) the remainder of the documents that were allegedly not supplied were missing as a result of clerical errors in the copying process; (c) had the State been provided with more particular notice of which documents were missing or illegible, the documents could have been provided; (d) the court's sanction of dismissing the indictment was too extreme, given the nature of the circumstances; and (e) since the State had substantially complied with the prior order and a new trial date had not been set, the defendant would not be prejudiced by affording the State the opportunity to deliver the missing documentation.

On June 3, 1994, the motion to reconsider was heard by the circuit court. Defense counsel admitted that his client had not been prejudiced by the delay, except perhaps psychologically. The State noted during the hearing that the defendant's motion to dismiss had not specified which documents were allegedly missing and illegible, so the State had been unable to respond. The circuit court denied the State's motion.

## II.

The State seeks a writ of prohibition contending generally that the circuit court's dismissal of the indictment was unduly harsh and, thus, constituted an abuse of discretion. The relator also contends that the State has acted throughout this ordeal in good faith and that the defendant's rights, including those to a speedy trial and double jeopardy, have not been infringed.

In support of the petition, the State advances a public policy argument that it has been completely deprived of the right to prosecute and represent the citizens of its jurisdiction by the circuit court's precipitous and severe action. In conceding that circuit courts, in appropriate cases, have authority to dismiss criminal charges, the State vehemently argues that the circuit court's failure to impose a less severe remedy, such as continuing the trial or limiting the State's use of the undisclosed information, was an usurpation of its authority. In addition to arguing the dismissal was unduly harsh and "a flagrant abuse of the trial court's powers," the State claims the ruling was motivated by the circuit court's personal opinion that Burger King, as a "corporate giant," could quickly and easily supply the requested documents if it desired.[2]

According to the relator, dismissal of an indictment is an appropriate sanction only when the State's failure to comply with a discovery request is in bad faith or where a defendant has been deprived of some specifically identified right, such as the right to a

---

**2.** The State claims that the circuit court's focus on Burger King was inappropriate because even large, well-organized corporations "do not automatically understand and appreciate the nuances and purposes of the criminal discovery process." It is argued that the district managers of Burger King are no different than the average person when it comes to their understanding of the criminal system, so they cannot be expected to perfectly understand and comply with a discovery request. Therefore, "[t]he ruling below reflects unrealistic expectations concerning the victim in the case." The relator also notes there was no finding that Burger King was attempting to defy the circuit court's authority.

speedy trial. In dismissing the case with prejudice, the relator states that the circuit court ignored the practical difficulties involved with locating and copying hundreds of pages of different kinds of information involving business transactions over several months.

■ Unquestionably, this Court has original jurisdiction over matters of prohibition and mandamus by virtue of Section 3 of Article VIII of the West Virginia Constitution[3] and W.Va.Code, 51–1–3 (1923).[4] W.Va. Code, 58–5–30 (1923), grants the State a limited right of appeal in criminal matters.[5] By statute, the State is allowed to appeal the dismissal of an indictment only upon the ground that the indictment is insufficient. Therefore, as relator asserts, its only available avenue for appellate review of the circuit court's ruling is by a writ of prohibition. *State v. Lewis*, 188 W.Va. 85, 422 S.E.2d 807 (1992). In Syllabus Point 5 of *Lewis, supra,* this Court concluded:

> "The State may seek a writ of prohibition in this Court in a criminal case where the trial court has exceeded or acted outside of its jurisdiction. Where the State claims that the trial court abused its legitimate powers, the State must demonstrate that the court's action was so flagrant that it was deprived of its right to prosecute the case or deprived of a valid conviction. In any event, the prohibition proceeding must offend neither the Double Jeopardy Clause

nor the defendant's right to a speedy trial. Furthermore, the application for a writ of prohibition must be promptly presented."

In Syllabus Point 1, in part, of *Hinkle v. Black*, 164 W.Va. 112, 262 S.E.2d 744 (1979), we stated: "[T]his Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate[.]" Although dismissing a case with prejudice obviously impairs the prosecution's ability to prosecute, we have grave reservations over whether this case involves the "substantial, clear-cut, legal errors" plainly in contravention of existing law. Nevertheless, we have decided to review this petition for purposes of establishing clearer guidelines for the circuit courts to follow when ruling on pretrial discovery violations.

■ The indictment against Lisa Harding was dismissed pursuant to Rule 16(d)(2) of the West Virginia Rules of Criminal Procedure[6] as a sanction for the State's partial noncompliance of a discovery order. Rule 16 provides for discovery and inspection of materials during trial, and Rule 16(d)(2) mentions the circuit court's alternatives if a party fails to comply with a discovery request. Under this rule, if a party fails to comply with the discovery rules, the circuit court has general authority to enter whatever order he deems necessary under the circumstances.

---

**3.** The pertinent portion of Section 3 of Article VIII is as follows: "The supreme court of appeals shall have original jurisdiction of proceedings in habeas corpus, mandamus, prohibition and certiorari."

**4.** W.Va.Code, 51–1–3, reads, in part: "The supreme court of appeals shall have original jurisdiction in cases of habeas corpus, mandamus and prohibition. It shall have appellate jurisdiction in ... prohibition, and in cases involving freedom or the constitutionality of a law."

**5.** W.Va.Code, 58–5–30, in pertinent part, provides:

> "Notwithstanding anything hereinbefore contained in this article, whenever in any criminal case an indictment is held bad or insufficient by the judgment or order of a circuit court, the State, on the application of the attorney general or the prosecuting attorney, may obtain a writ of error to secure a review

of such judgment or order by the supreme court of appeals. No such writ of error shall be allowed unless the State presents its petition therefor to the supreme court of appeals, or one of the judges thereof, within thirty days after the entry of such judgment or order."

**6.** Rule 16(d)(2) reads as follows:

> "Failure to Comply with a Request.—If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances. The court may specify the time, place and manner of making the discovery and inspection and may prescribe such terms and conditions as are just."

■ Usually, issues concerning discoverable information arise during trial. As the relator points out, there are no reported cases in this State involving the dismissal of an indictment prior to trial as a sanction for partial discovery noncompliance. General guidance is provided by several of our discovery cases where the violation is discovered after the commencement of trial. In Syllabus Point 2, in part, of *State v. Grimm,* 165 W.Va. 547, 270 S.E.2d 173 (1980), this Court stated that "non-disclosure by the prosecution is fatal to its case where such non-disclosure is prejudicial." The traditional appellate standard for determining prejudice involves a two-pronged analysis: "(1) did the non-disclosure surprise the defendant on a material fact, and (2) did it hamper the preparation and presentation of the defendant's case". *State v. Miller,* 178 W.Va. 618, 624, 363 S.E.2d 504, 510 (1987). *See also State v. Johnson,* 179 W.Va. 619, 371 S.E.2d 340 (1988); *State v. Bennett,* 176 W.Va. 1, 339 S.E.2d 213 (1985); *State v. Grimm, supra.*[7]

■ The aforementioned cases suggest an appropriate method of review if nondisclosed material is revealed at trial and the defendant loses. Under these cases, denial of discovery or nondisclosure under a discovery order is grounds for a new trial when the nondisclosed information is material and the defendant is surprised or prejudiced. However, as we stated above, none of these cases address the issue that is currently before this Court; namely, what are the appropriate circumstances, in a pretrial context, that a trial court may impose sanctions for noncompliance with a discovery order.

■ We begin our analysis with some general observations. Discovery is one of the most important tools of a criminal defendant. The purpose of Rule 16(a), our basic discovery rule in criminal cases, is to protect a defendant's right to a fair trial. The degree to which that right suffers as a result of a discovery violation cannot be determined by simply asking would the nondisclosed information enhance or destroy the State's case. A significant inquiry is how would the timely access of that information have affected the success of a defendant's case.

■ While discovery has not been elevated to a constitutional dimension,[8] it is clear that constitutional rights of a criminal defendant are implicated when a discovery system has been put in place and the prosecution fails to comply with court ordered discovery. We believe that it is necessary in most criminal cases for the State to share its information with the defendant if a fair trial is to result. Furthermore, we find that complete and reasonable discovery is normally in the best interest of the public. One consequence of full and frank discovery is that it may very well encourage plea negotiations. As Dean Pye has noted:

"Most criminal cases result in a plea of guilty. The principal role of the capable advocate in many circumstances is to advise that his client plead guilty. For this advice to be meaningful, it must be based upon knowledge of the facts and the consequences. One of these consequences is the probability of conviction if the client goes to trial. It may be impossible for counsel to make any intelligent evaluation of the alternatives if he knows only what his client has told him and what he has discovered on his own."

*The Defendant's Case for More Liberal Discovery,* 33 F.R.D. 82, 83 (1963).

---

7. The relator also cites *Bell v. Inland Mutual Insurance Company,* 175 W.Va. 165, 332 S.E.2d 127, *appeal dismissed, cert. denied, sub nom, Camden Fire Ins. Ass'n v. Justice,* 474 U.S. 936, 106 S.Ct. 299, 88 L.Ed.2d 277 (1985), in support of its argument that dismissal is only justified when the State acts in bad faith. *Bell* was a civil case where this Court held striking pleadings and rendering a default judgment against a party is appropriate when there has been a finding that "the failure to comply has been due to willfulness, bad faith or fault of the disobedient party and not the inability to comply, and further, that such sanctions are otherwise just." 175 W.Va. at 172, 332 S.E.2d at 134. Although the relator acknowledges there are different interests in civil and criminal matters, it contends, nevertheless, that the State is entitled to have its cases heard in the absence of a showing of bad faith and that the defendant has not been prejudiced by the delay in the trial.

8. *See Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 845–46, 51 L.Ed.2d 30, 42 (1977).

The West Virginia Rules of Criminal Procedure provide little guidance as to what is the proper response of a circuit court to a discovery violation. While this Court frequently notes that a circuit court is given "broad latitude" in its selection of an appropriate remedy, when a circuit court has promulgated specific discovery orders and guidelines for certain discovery requests and those guidelines have been ignored or violated, reversal is usually the result if there is any fair showing of prejudice. In this case, of course, the violation occurred before trial and the circuit court granted the defendant's request for dismissal with prejudice.

▮▮▮▮ The scope of appellate review must necessarily be an abuse of discretion standard. For us to determine whether the circuit court abused its discretion by imposing such a drastic sanction, we must first review the range of remedies available. Rule 16(d)(2) provides that where there has been noncompliance with legitimate discovery requests, a circuit court, in addition to ordering immediate disclosure, granting a continuance, and excluding evidence, "may enter such other order as it deems just under the circumstances." This broad language justifies the adding of several other remedies or sanctions to the list such as (a) advising the jury to assume the existence of facts that might have been established by the missing information, (b) holding the violator in contempt of court, (c) granting a mistrial, and (d) dismissing the charges. We specifically hold that one of the permissible sanctions under Rule 16(d)(2) for a discovery violation is a dismissal with prejudice. Under the facts of this case, we do not think it can be said that the circuit court exceeded the broad latitude which must be accorded it in making this decision.

▮▮▮▮ Which remedy is preferable is best left to the discretion of the circuit court. Such rulings will not be reversed unless there is an abuse of discretion. The circuit court must have discretion to fashion a remedy for noncompliance that encompasses "a fair balancing of the interests of the courts, the public, and the parties[,]" recognizing that the dismissal of cases with prejudice is a remedy which should be used only in the most egregious cases. *People v. Taylor*, 159 Mich.App. 468, 487, 406 N.W.2d 859, 869 (1987). We also believe several factors must be weighed in determining whether the exercise of discretion in cases such as this is appropriate. Those factors include, but are not limited to:

(a) the importance and materiality of the information that was not disclosed;

(b) the ability of the party to try the case without the information or the nature of the prejudice claimed by the failure to comply with the discovery order;

(c) the extent to which a continuance or other lesser relief would delay the trial or otherwise impact adversely the administration of justice;

(d) the degree of negligence involved and the explanation of the party's failure to comply with a discovery request;

(e) the effort made by the party to comply with the discovery order;

(f) the number of times the circuit court ordered the party to comply with the discovery order; and

(g) in some cases, the severity of the offense.

▮▮▮▮ Further expansion of these factors is necessary. Once a circuit court receives a motion requesting sanctions or relief for discovery violations, the circuit court should order, to the full extent required by the discovery rules or the court order, an immediate disclosure. The relief that is appropriate initially will depend to a large degree on the reason disclosure was not timely made and the prejudice resulting from the failure to provide timely discovery. Similarly, the circuit court should review the frequency and force of the defendant's objections or motions as opposed to attaching significant weight to a pure *pro forma* protest. The preferred relief where the party responsible for the violation has not acted in bad faith is to grant the defendant a continuance giving him or her an opportunity to prepare for trial once the discovery materials have been made available. Thus, where the violation relates to discovery of potential trial evidence, the circuit court is advised to grant

a continuance sufficient in duration to permit the defendant to obtain that evidence and to prepare for trial.

Our cases and the West Virginia Rules of Evidence have declared an implicit preference for a continuance when there has been a discovery violation. *See* W.Va.R.Evid. 403 ("unfair surprise" is not listed as a ground for exclusion). *See State v. Barker,* 169 W.Va. 620, 623, 289 S.E.2d 207, 210 (1982) ("[e]ven if this were a 'proper' case in which to claim surprise, the appellant failed to move for a continuance, and, therefore, waived his right to one"); *Martin v. Smith,* 190 W.Va. 286, 291, 438 S.E.2d 318, 323 (1993) ("even given that the admission of Dr. Adams' testimony prejudiced Dr. Smith's case, we find such prejudice far from incurable. Dr. Smith could have easily moved for a continuance in order to secure a comparable expert witness").

■ Although we believe that a continuance is the preferred response to a discovery violation where bad faith is not found, the circuit court must recognize there are some situations where a continuance is not an appropriate or satisfactory remedy. If a continuance will cause too great a disruption in the trial process, or if a continuance will not dissipate the prejudice caused by the nondisclosure,[9] a circuit court should consider stronger measures such as dismissal. Sanctions generally should not have "adverse effects on the rights of the parties"; a dismissal with prejudice necessarily has a substantial effect on the interest of the community and the party represented by the prosecu-

tion. *State v. Lewis,* 632 P.2d 547, 549 (Alaska App.1981). Accordingly, the sanction of dismissal should be used sparingly and only when the prosecution has been derelict in its effort to comply with discovery orders. While it normally should be a remedy of last resort, we refuse to place the circuit court in a position where it can dismiss a case only where other lesser measures clearly cannot provide a defendant with a fair trial. Rather, we hold that a circuit court may choose dismissal for egregious and repeated violations where lesser sanctions such as a continuance would be disruptive to the administration of justice or where the lesser sanctions cannot provide the same degree of assurance that the prejudice to the defendant will be dissipated.

■ A balancing test necessarily compels courts to approach sanctions on an *ad hoc* basis. We have done little more than identify some of the factors which circuit courts should assess in determining the appropriateness of a particular sanction. A circuit court should make findings on the record using these factors, with any other relevant considerations, to facilitate review; and, on appeal we will be able to scrutinize closely the basis for the circuit court's decision. Only in this way can the rights of a criminal defendant, the State, and the public be appropriately protected.

■ Applying the factors we have discussed, we find it significant that the discovery violation continued over a period of eight months and twice required scheduled trials to be continued.[10] Also, we observe that

**9.** There are situations where the late disclosure comes only after a defendant has been required to commit himself to a position that would be inconsistent with disclosed information that should have been made available earlier.

**10.** The following is a brief chronology of the events we believe are relevant in this action:
   1. May, 1993 Term—the date of first indictment charging the defendant with twelve counts of embezzling money from her former employer.
   2. June 22, 1993—Original trial date.
   3. June 10, 1993—Twelve days before trial, the State moved to dismiss the indictment without prejudice claiming it was insufficient.
   4. September, 1993—A second indictment was returned.
   5. November 8, 1993—Second trial scheduled for this date.

   6. October 7, 1993—Defendant's motion for discovery filed.
   7. October 19, 1993—Defendant moved to continue the trial on the ground that the State had failed to respond in a timely manner to the motion for discovery.
   8. October 29, 1993—State filed a response claiming its response was timely because W.Va. R.Crim.P. 16 sets no specific time for responses.
   9. November 1, 1993—Circuit court granted the defendant's motion to continue and rescheduled the case for the January, 1994, Term.
   10. November 23, 1993—By letter, the defendant's counsel informed the State its discovery responses were deficient. Additional documents requested were various kinds of reports including sales synopsis, sales reports, voids, tax re-

during this period of eight months the State at no time sought to avail itself of the protections provided under Rule 16(d)(1) nor did the State upon realizing that Burger King was not cooperating make any attempt to obtain a subpoena *duces tecum* pursuant to W.Va.Code, 57–5–4 (1990). If moral or friendly persuasion is insufficient to acquire documentary evidence needed for trial, a subpoena *duces tecum* is always available. Moreover, a Rule 16(d)(1) request for a protective order is the appropriate vehicle for bringing these concerns to the circuit court. Instead, the State committed to the court and to the defendant that it would provide these documents and did not attempt to retract that commitment until the end. Thus, the State's agreement to comply with the defense discovery request lessens the impact of its claim that it did not have all the requested documents in its possession.[11] It seems a bit late for the relator to argue that the materials were too voluminous, not in its possession, or did not have to be produced at all. The circuit court found otherwise, and we have no legal or factual basis for upsetting those findings.

Although the circuit court may have harbored some antipathy towards big business in general and Burger King specifically, the record does not support the relator's allegation that the circuit court acted in a prejudicial or unduly harsh fashion solely because a corporation was the victim. Nor do these allegations negate our holding that it is within the circuit court's discretion to dismiss an indictment under Rule 16(d)(2) under appropriate circumstances. We do not find it persuasive that there are no other cases where the sanction of dismissal was ordered for pretrial discovery violations. Obviously, the drafters of the West Virginia Rules of Criminal Procedure contemplated and generally provided for appropriate sanctions when dealing with recalcitrant litigants.

■ Clearly, the extent and scope of pretrial discovery is within the circuit court's discretion, and we will not disturb a circuit court's ruling unless there is a clear abuse of discretion. *State v. Johnson, supra; State v. Lassiter,* 177 W.Va. 499, 354 S.E.2d 595 (1987); *State v. Bennett, supra; State v. Audia,* 171 W.Va. 568, 301 S.E.2d 199, *cert. denied,* 464 U.S. 934, 104 S.Ct. 338, 78 L.Ed.2d 307 (1983). As we stated previously, "[w]here the State claims the trial court abused its legitimate powers, the State must demonstrate that the court's action was so flagrant that it was deprived of its right to prosecute the case or deprived of a valid conviction" before the State's motion for a writ of prohibition will be granted. *See* Syllabus Point 5, in part, *State v. Lewis, supra.* The relator has failed in its burden in this case. A few unfortunate comments by the circuit court tied to a sanction that is clearly within its discretion is not enough to show an abuse of discretion. The State failed to

ports, and a manual explaining the operation of the computer/cash register.

11. November/December, 1993—Prosecuting attorney, rather than objecting or asking for a protective order, orally agreed to provide the requested documentation.

12. March 21, 1994—Third trial scheduled on this date for the January, 1994, Term.

13. February 4, 1994—State had not acquired the requested documents from Burger King nor did the State file a request for extension or for a protective order.

14. March 8, 1994—Defendant filed motion to dismiss the indictment; or, in the alternative, to continue the trial.

15. March 11, 1994—Hearing on the defendant's motions; State still had not obtained requested information and did not request a protective order. State committed to circuit court it would subpoena *duces tecum* records. State was informed it had ten days to deliver documents to counsel or *case would be dismissed.* Trial was continued to May, 1994, Term.

16. March 21, 1994—State maintains it served what it believed were all the requested documents.

17. April 27, 1994—Defendant renewed its motion to dismiss alleging the State failed to provide several of the requested reports and a number of the reports provided were illegible.

18. May 4, 1994—Circuit court held a hearing on the defendant's motion. State argued it had supplied a substantial amount of the information requested and the defendant would not be prejudiced because a new trial date would be set on arraignment day at the beginning of the May, 1994, Term. Circuit court dismissed the indictment.

**11.** At the March 11, 1994, hearing, the State admitted it was "not sure if they [Burger King] was (sic) being recalcitrant or they just don't understand".

prove that the dismissal, although stringent, was unwarranted.

It is irrelevant that the State did not expect the circuit court to issue such a harsh sanction. Subjective expectations of the State are simply insignificant in determining whether the circuit court abused it discretion. Concededly, the dismissal of an indictment is a severe sanction that should be used sparingly,[12] but we find it is a sanction that is within the circuit court's arsenal, and appropriately so, for it ensures that circuit courts have power to regulate congested trial dockets in many of the circuits in this State.

Not only did these discovery violations affect the defendant, but there were also other interests at stake than just the parties. As the relator astutely recognizes in its brief, the interests of the people of West Virginia are also implicated in any criminal proceeding.[13] Numerous delays, unnecessary continuances, and additional hearings to address noncompliance of discovery rules contribute to the cost and the length of these criminal proceedings. Here, the trial court was confronted not simply with the interests of the defendant, the prosecution, but with the competing interest of judicial economy and other institutional concerns. In this context, courts have an independent interest in ensuring that criminal trials are conducted expeditiously and that these legal proceedings appear fair to all who observe.

■ The prosecution has noted emphatically that the defendant was not prejudiced by the delay or the repeated and continuous discovery violations. We disagree.[14] Unfortunately, circuit courts must rule on the issue of what sanction is appropriate for pretrial discovery violations "not with the wisdom of hindsight after the trial has taken place, but in the murkier pretrial context when [the development and the outcome of the trial] ... are seen through a glass, darkly." *Wheat v. United States*, 486 U.S. 153, 162, 108 S.Ct. 1692, 1699, 100 L.Ed.2d 140, 151 (1988). In a criminal trial, the stakes are ordinarily much higher than in a civil case where the loss of money or property is the worse that can be inflicted. In a criminal case, a defendant's liberty, and sometimes his life, depends on the outcome. Prejudice should be assessed in the light that the discovery rules were designed to protect.[15] Undoubtedly, the defendant did not have the information that the circuit court thought important enough to order delivered within ten days or risk the sanction of dismissal. Untimely compliance with discovery requests limits the possibility that a defendant will be prepared. Of course, this factor is the most serious "because the inability of a defendant

---

12. Under Rule 37(b)(2)(C) of the the West Virginia Rules of Civil Procedure, dismissal is an appropriate sanction for a party's failure to obey court ordered discovery. However, we have also recognized in a civil context that "[a]s a general rule, the rendering of judgment by default as a sanction under Rule 37(b) [(2)(C)] should be used sparingly and only in extreme situations." *Bell*, 175 W.Va. at 172, 332 S.E.2d at 134.

13. The State argued in its brief that the trial court acted as if the defendant's criminal case was actually a civil case between two parties. Further, the State contends the defendant was accused of "a crime against the peace and dignity of the State of West Virginia" and not just because the money stolen was from Burger King. In addition, the petitioner contended that the record reflects that the trial judge became impatient with the delay in the trial and decided to punish the "big" company (Burger King) without taking into consideration the interests of the people of West Virginia.

14. The State's position seems to be that this Court should erect a *per se* rule against dismissals with prejudice unless a defendant can show

prejudice or prove that the prosecution acted in bad faith. We believe the adoption of a *per se* rule would be inappropriate because dismissals could serve a legitimate State purpose in some cases, and a prosecution's violation of a discovery order could be so egregious as to warrant the stringent sanction of dismissal with prejudice. *See* note 9, *supra*. To be clear, we do not mean to suggest that a defendant has a right to fabricate a defense, but we strongly note that our Rules of Criminal Procedure have provided a right to discovery, and correspondingly, a right to devise a defense and trial strategy on the basis of the evidence disclosed by the prosecution. *United States v. Noe*, 821 F.2d 604 (11th Cir. 1987).

15. *See generally Barker v. Wingo*, 407 U.S. 514, 532, 92 S.Ct. 2182, 2193, 33 L.Ed.2d 101, 118 (1972) ("Prejudice, of course, should be assessed in the light of the interests of the defendants which the speedy trial right was designed to protect").

adequately to prepare his case skews the fairness of the entire system." *Barker v. Wingo*, 407 U.S. 514, 532, 92 S.Ct. 2182, 2193, 33 L.Ed.2d 101, 118 (1972). Continuance or delay "compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Doggett v. United States*, 505 U.S. 647, 655, 112 S.Ct. 2686, 2693, 120 L.Ed.2d 520, 531 (1992). Therefore, in exercising discretion pursuant to Rule 16(d)(2) of the West Virginia Rules of Criminal Procedure, a circuit court is not required to find actual prejudice to be justified in sanctioning a party for pretrial discovery violations. Prejudice may be presumed from repeated discovery violations necessitating numerous continuances and delays.

Although we agree that the sanction of dismissal should be used sparingly, we find that the circuit court did not abuse its discretion when it dismissed the indictment against Lisa Harder. For the forgoing reasons, the writ is denied.

Writ denied.

WORKMAN, J., dissents and reserves the right to file a dissenting opinion.

BROTHERTON, J., did not participate.

MILLER, Retired Justice, sitting by temporary assignment.

BROTHERTON, J., did not participate.

MILLER, Retired Justice, sitting by temporary assignment.

WORKMAN, Justice, dissenting:

I do not necessarily disagree with the majority's recitation of the law applicable to this case. The difficulty with the majority's approach, however, is that it crams a square peg into a round hole. The facts and circumstances of this case simply do not justify the harsh and ultimate sanction of dismissal with prejudice. In short, I would hold that the circuit court abused its discretion in this instance and that the Relator has adequately demonstrated the standard required for granting a writ of prohibition. Accordingly, I respectfully dissent.

The majority sets forth several factors to be weighed in determining whether a circuit court's exercise of discretion is appropriate in a given case. It is helpful, then, to consider those factors in conjunction with the record in this case. First, we are instructed to look at "the importance and materiality of the information that was not disclosed." *State ex rel. Rusen v. Hill*, 193 W.Va. at 140, 454 S.E.2d at 434 (1994). It must be emphasized that nowhere in the record did the Respondent ever give any good indication of how the requested information was even relevant, much less important and material. Aside from a conclusory statement at the March 11 hearing that the documents were "essential," there does not appear to be any suitable basis in the record for concluding that the documents are either important or material.

Second, we must consider "the ability of the party to try the case without the information or the nature of the prejudice claimed by the failure to comply with the discovery order." *Id.* Again, the Respondent's ability to try the case without the requested information is left up for speculation. The record is devoid of any hint as to how the missing documents would assist the Respondent either in proving (1) her innocence or (2) an affirmative defense. Further, it appears that some of the documents requested by the Respondent after the Relator's March 21 discovery response may have been duplicative of materials the Respondent had already received. *See* Relator's Pet. at 12.

As for any prejudice suffered from the Relator's failure to comply with the circuit court's discovery order, the Respondent has answered the question for us. The following exchange occurred at a June 3, 1994, hearing on the Relator's motion to reconsider the dismissal order:

> JUDGE HILL: Tell me how the defendant has been prejudiced by the delay, other than psychologically?
>
> MR. COSENZA: Well, other than psychologically, Your Honor, *probably not.*

Relator's Exhib. 5 at 7 (emphasis added).[1]

Next, the Court looks to "the extent to which a continuance or other lesser relief

---

1. It is interesting to note that even though the Respondent admitted a lack of prejudice, the

would delay the trial or otherwise impact adversely the administration of justice." Op., 193 W.Va. at 140, 454 S.E.2d at 434. The majority sets forth an impressive number of less serious alternatives to a dismissal with prejudice. Further, the majority notes repeatedly that of all the tools at the disposal of the circuit court, the dismissal sanction is to be used most sparingly and only in the most egregious of cases. The majority also notes that "[o]ur cases and the West Virginia Rules of Evidence have declared an implicit preference for a continuance when there has been a discovery violation." *Id.*, at 141, 454 S.E.2d at 435.

It is important to remember that at the time the dismissal occurred, no new trial date had been set. Relator's Ex. 4 at 5. Further, the circuit court clearly thought that a continuance might still be appropriate, even when it was reconsidering this matter after its dismissal order. At the hearing on the Relator's motion to reconsider on June 3, 1994, the court suggested that it might still be willing to change its dismissal ruling if all of the requested material had been provided by the date of the hearing. Relator's Ex. 5 at 9. When one coalesces (1) the supposed use of dismissal as a weapon of last resort, (2) the "preference for a continuance," and (3) the record as a whole, a rescheduling of the trial was clearly warranted.

Even if a sanction was necessary, however, the administration of justice in this case

would have been better served if the circuit court employed a less severe sanction, such as prohibiting the Relator from using the requested material at trial. At least then this matter would have been decided on the merits rather than on a mere procedural technicality.[2]

Fourth, we examine "the degree of negligence involved and the explanation of the party's failure to comply with a discovery request." Op. at 434. There is ample evidence in the record to support the conclusion that the Relator was doing her best under the circumstances. Utilizing the majority's chronology, the first discovery request under the second indictment was made on October 7, 1993. The Relator responded over one week prior to trial. When informed on November 23 by the Respondent that more information was needed, the Relator undertook to gather the information, and admittedly took some time to do so. Part of the problem arose from Burger King's misunderstanding of the request. When ordered at the March 11 hearing to produce the requested documentation within ten days, the Relator did just that. She did not learn that her document production was deficient, however, until over one month later on April 27 when the Respondent renewed her motion to dismiss.[3] The bottom line is that while her efforts were not a model of efficiency, the Relator was acting in good faith and substantially complied with the court's discovery order.

It was the circuit court's incorrect perception that its orders were being disobeyed by Burger King that resulted in the citizens of this State being denied an opportunity to litigate the serious offenses with which the Respondent was charged. If the court really wanted to resolve the matter in the interests of justice, it should have required Burger King to show cause for the misunderstanding or be held in contempt. In fact, the court considered this option, but failed to follow through with it. *See id.*

3. Perhaps one reason that the Relator could not supply the missing documentation prior to dismissal was the Respondent's utter failure in her April 27 motion to identify the missing documentation with any degree of particularity. Further, there is evidence in the record which suggests that some of the requested information simply did not exist.

---

majority insists on concluding that prejudice is present. In finding such presumed prejudice based upon delay in the instant case, the majority relies in part on the Supreme Court's recent decision in *Doggett v. United States*, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). The citation to *Doggett* and the implicit suggestion that it has any application to the facts of this case is almost amusing. *Doggett* dealt with a defendant's right to a speedy trial, and the delay in that case (between indictment and arrest) exceeded eight years. *Id.* at ——, 112 S.Ct. at 2690.

2. What clearly did not further the administration of justice in this case was the circuit court's improper preoccupation with Burger King. A fair reading of the record suggests that a primary motivation of the dismissal order was Burger King's status as "a big company, a big company with lots of resources, plenty of people, plenty of money to act on this...." Relator's Ex. 4 at 7.

The delay in the instant case was the result of honest confusion and clerical errors occasioned by a voluminous amount of information that spans over several months and consists of hundreds and perhaps thousands of pages. The Relator could likely have objected to the request but, in an effort to speed things along, simply tried her best to comply. The totality of these circumstances should clearly have impacted on the circuit court.

Next, we must consider "the effort made by the party to comply with the discovery order." *Id.* The preceding discussion largely applies here as well. We are dealing not with an outright refusal to comply, but rather good faith, substantial compliance.[4]

Sixth, we look to "the number of times the circuit court ordered the party to comply with the discovery order." *Id.* After examining the record and the majority's chronology, it appears that there were no more than perhaps two such orders. While this Court does not take wilful disobedience of circuit court orders lightly, that is not what happened here. Again, it must be remembered that the Relator substantially complied in good faith with the result mandated by the circuit court. Nevertheless, the court meted out the ultimate sanction.

Finally, we examine "the severity of the offense." *Id.* The Respondent was charged with no less than twelve counts of embezzlement. While not perhaps as serious as a violent crime, employee theft is a costly, pervasive and immensely serious problem that continues to grow. *See* Wendy Zellner, *Sticky Fingers Are Rifling Through Retail,* Business Week, Mar. 28, 1994, at 36 (stating that "[c]ustomer and employee theft are 'increasing fairly dramatically' across the [retail] industry ..."). Such offenses cannot be ignored. Indeed, they must be vigorously deterred.

An examination of the applicable factors clearly illustrates that the circuit court exceeded its discretion and that its flagrant actions deprived the Relator and the citizens of this State[5] of their right to prosecute the Respondent. While I largely agree with majority's recitation of the law, the facts do not warrant dismissal. I would grant the writ.

---

**4.** As for the majority's reference to the Relator's failure to secure a subpoena duces tecum for the documents, the circuit judge suggested at the March 11 hearing that such a measure was unnecessary. *See* Relator's Ex. 3 at 5.

**5.** The majority opinion purports to consider "the interests of the people of West Virginia." Op. 193 W.Va. at 143, 454 S.E.2d at 437. It would indeed be interesting to gauge the reactions of the citizens of this State when they are told that an individual charged with numerous serious felonies will walk away unscathed because the State had difficulty responding to a complex discovery request. I doubt the holding in this case will "appear fair to all who observe." *Id.,* at 143, 454 S.E.2d at 437.