550 S.E.2d 404

**STATE of West Virginia ex rel. Timothy Dwayne JUSTICE, Petitioner Below, Appellee,**

v.

**George TRENT, Warden, West Virginia Department of Corrections, Mt. Olive Correctional Complex, Respondent Below, Appellant.**

No. 28737.

Supreme Court of Appeals of West Virginia.

Submitted June 5, 2001.

Decided July 2, 2001.

William J. Sadler, Esq., Prosecuting Attorney, Princeton, West Virginia, Attorney for Appellant.

Gerald R. Linkous, Esquire, Princeton, West Virginia, Attorney for Appellee.

PER CURIAM:

This is an appeal by the State of West Virginia from a habeas corpus order of the Circuit Court of Mercer County awarding a new trial to the relator, Timothy Dwayne Justice, who previously had been convicted of first degree murder, aggravated robbery and conspiracy. The court ordered the new trial because the State had failed to produce certain blood test results pursuant to a defense discovery order. On appeal, the State claims that the relator waived his right to challenge the non-production of the test results by failing to raise the issue in his direct appeal. The State also claims that the test results were not important to the defense.

## I.

### FACTS

The relator, Timothy Dwayne Justice, was charged with the murder, the aggravated robbery of, and with conspiracy in conjunction with the murder of Angela Swick. While investigating the crime, the State obtained the pants and a t-shirt which the relator possibly was wearing at the time of the crime. The State ordered that lab tests be performed on these items to determine whether they contained blood stains which might link the relator to the crime. The lab tests resulted in two lab reports. The first report dated February 7, 1995, indicated that there was a human blood stain on the t-shirt. The second report dated May 15, 1995, indicated that the t-shirt sample was inadequate to establish that there was even human blood on the t-shirt.

Prior to the relator's trial, his attorney filed a discovery motion under Rule 16(d) of the West Virginia Rules of Criminal Procedure to examine the results of all scientific tests conducted by the State. The court granted the motion. The office of the Prosecuting Attorney of Mercer County, which was pursuing the case, maintained an open-file policy and, pursuant to that policy, the Prosecuting Attorney, to satisfy the discovery order, allowed the relator's attorney to examine the file in the case. At the time, neither set of t-shirt examination results was in the file.

After the relator's attorney examined the file in the case, the Prosecuting Attorney's office received the first blood test report, and it appears that the relator's attorney was informed that the report had been received and that it indicated that human blood, which could not be identified as DNA type, had been found on the relator's t-shirt. The report, however, was not provided to the relator's attorney.

After the second report was received, which indicated that the sample of blood on the shirt was insufficient to identify the blood even as human blood, the State failed to notify the relator's attorney that the new test results had been received.

During the relator's actual trial, his attorney, who apparently wanted to inquire about the relator's pants, inadvertently asked whether blood stains had been found on the relator's "clothing." The trooper being questioned properly responded that a blood stain was found on the relator's shirt.

At the conclusion of the trial, the relator was found guilty by jury, and subsequently sentenced to life in the penitentiary, with a recommendation of mercy.

The relator appealed his conviction to this Court in November 1995. In that appeal, he did not raise or assign as error the fact that the State had failed to provide him with the laboratory examination reports. This Court, after considering the relator's petition, on February 8, 1996, refused to grant the appeal which he sought.

Later, the relator instituted the present habeas corpus proceeding. In his habeas corpus petition, he raised many issues relating to his trial, including the fact that the

State had not timely produced the laboratory examination reports. The Circuit Court of Mercer County granted the petition and conducted an omnibus habeas corpus hearing. During the hearing, the State did not assert that the relator had waived any error arising out of the failure to produce the examination reports. Instead, it argued that the failure to produce the reports was not prejudicial. At the conclusion of the hearing, the circuit court held that all of the relator's claims were without merit except his claim relating to the non-disclosure of the blood test results.

With regard to the failure of the State to produce the blood test reports, the circuit court found that the State had a duty to produce the reports prior to trial and that the failure to produce violated not only the discovery ruling in the case, but also violated the open-file policy maintained by the Prosecuting Attorney's Office.

The court further concluded that although the blood test evidence was not exculpatory, relator's counsel did not have an opportunity to have the clothing independently tested or evaluated and suggested that further testing or evaluation might disclose blood type or DNA which the court inferred might be exculpatory.

After the court announced its decision, the State moved for reconsideration and for the first time argued that by failing to raise the non-production issue on direct appeal, relator had waived any error relating to the issue.

On reconsideration, the circuit court found that the second report dated May 15, 1995, showed that no human DNA was identifiable from the t-shirt and that this showing, in effect, contradicted the inference raised by the investigating officer's testimony at trial that human blood had been found on the relator's shirt. The court, therefore, again concluded that the non-disclosure was significant and the relator was entitled to a new trial.

On appeal, the State argues that the relator waived the non-disclosure issue by failing to raise it on direct appeal. The State also claims that the nondisclosure has not been shown to be prejudicial, and that under the circumstances, the circuit court erred in awarding the relator a new trial.

## II.

## STANDARD OF REVIEW

 In Syllabus Point 1 of *State ex rel. Postelwaite v. Bechtold,* 158 W.Va. 479, 212 S.E.2d 69 (1975), *cert. denied* 424 U.S. 909, 96 S.Ct. 1103, 47 L.Ed.2d 312 (1976), the Court held that: "Findings of fact made by a trial court in a post-conviction habeas corpus proceeding will not be set aside or reversed on appeal by this Court unless such findings are clearly wrong." The Court has also indicated that a circuit court's final order and ultimate disposition are reviewed under the abuse of discretion standard, and that conclusions of law are reviewed *de novo. State ex rel. Hechler v. Christian Action Network,* 201 W.Va. 71, 491 S.E.2d 618 (1997).

## III.

## DISCUSSION

 The first claim made by the State of West Virginia in the present proceeding is that the relator waived any error arising out of the failure of the State to produce the blood test examination reports by failing to raise that error on direct appeal to this Court.

 Recently, in *State v. Crabtree,* 198 W.Va. 620, 482 S.E.2d 605 (1996), this Court discussed "waiver" in the criminal context and indicated that a waiver occurs where there is an intentional relinquishment or abandonment of a known right. The Court has also indicated that a waiver may be presumed in a criminal context where a defendant intelligently and knowingly waives, or, in effect, abandons and relinquishes, any contention or ground for relief which he could have advanced on direct appeal. This presumption is, however, rebuttable. *Ford v. Coiner,* 156 W.Va. 362, 196 S.E.2d 91 (1972).

As has been previously stated, the relator's attorney was aware of the first examination report prior to the relator's trial, even though he was not provided with a copy of it and even though he was not afforded an

opportunity to examine it. There is, however, no evidence that the relator's counsel was provided the second examination report or results at the time of trial. Further, the record does not show that that second report was available to the defense at the time of the relator's appeal.

According to *State v. Crabtree, supra*, for a waiver to occur, a defendant must knowingly relinquish or abandon a contention or ground for relief which he could have advanced on appeal.

■ In this Court's opinion, for the relinquishment or abandonment of a contention or ground for relief to be made "knowingly," that is, for a waiver to occur, the relinquishment or abandonment must be made with a full understanding or knowledge of the circumstances implicated in the contention or ground of relief involved.

In the present case, the Court believes that the fact that the relator or his attorney did not receive the second examination report potentially deprived him of an understanding of the overall facts of the case, and potentially affected his ability to assert a claim of error on appeal. In effect, there was a sufficient basis for the trial court to conclude that the relator did not have enough knowledge to waive his contention relating to the non-production of the test results by not raising it on appeal.

■ The second position asserted by the State of West Virginia is that the withholding of the examination reports was not significant and did not affect the fairness of the relator's trial.

■ In *State ex rel. Rusen v. Hill*, 193 W.Va. 133, 454 S.E.2d 427 (1994), the Court stated:

. While discovery has not been elevated to a constitutional dimension, it is clear that constitutional rights of a criminal defendant are implicated when a discovery system has been put in place and the prosecution fails to comply with court ordered discovery. We believe that it is necessary in most criminal cases for the State to share its information with the defendant if a fair trial is to result. Furthermore, we find that complete and reasonable discovery is normally in the best interest of the public.

193 W.Va. at 139, 454 S.E.2d at 433. The Court also said:

The purpose of Rule 16(a) [of the West Virginia Rules of Criminal Procedure], our basic discovery rule in criminal cases, is to protect a defendant's right to a fair trial. The degree to which that right suffers as a result of a discovery violation cannot be determined by simply asking would the nondisclosed information enhance or destroy the State's case. A significant inquiry is how would the timely access of that information have affected the success of the defendant's case.

193 W.Va. at 139, 454 S.E.2d at 433.

■ Finally, in *State ex rel. Rusen v. Hill, id.*, the Court indicated that whether prejudice results from the failure of the State to comply with a discovery order is determined by asking whether the non-disclosure results in a surprise and whether it, hampers the preparation and presentation of the defendant's case.

The relator in the present case was accused of committing a murder under circumstances which potentially produced human blood. The State in investigating the case initially ascertained through the first blood examination that there was human blood on a t-shirt possibly worn by the relator at the time of the crime charged. While this evidence standing alone may have been insufficient to support the conviction of the relator, the Court believes that it did potentially have some inculpatory affect in that it suggested that the relator had been exposed to human blood, possibly the blood of the victim, at the time of the crime charged. During trial, the fact that human blood was found upon the t-shirt was brought to the attention of the jury and potentially provided the jury with an inculpatory link connecting the relator with the victim of the crime charged.

As has previously been stated, the second examination of the t-shirt indicated that it was impossible to identify human blood on the t-shirt. This result on its face contradicts the first result and, in this Court's view,

if the report of the result had been available, the relator's attorney possibly, by bringing it to the attention of the jury, could have destroyed the potential inculpatory link established by the first report result. Additionally, the circuit court believed that the failure of the State to produce the reports potentially dampened any initiative by the relator's attorney to have an independent examination of the clothing conducted.

Rather obviously the relator's attorney did not have the second examination report at the time of trial, and its ultimate production was a surprise. Further, it potentially could have assisted defense counsel in the preparation of the relator's case.

In view of this, this Court believes that the proper production of the test results might have affected the success of the relator's trial, and that under the rules set forth in *State ex rel. Rusen v. Hill, supra,* it was within the discretion of the Circuit Court of Mercer County to grant the relator a new trial.

The judgment of the Circuit Court of Mercer County is, therefore, affirmed.

Affirmed.