# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 17-0655** (Berkeley County CC-02-2016-F-19)

**J.C.L.,**
**Defendant Below, Respondent**

**FILED**

**June 8, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner J.C.L., by counsel B. Craig Manford, appeals his convictions in the Circuit Court of Berkeley County, for the offenses of felony murder, robbery, and fraudulent use of an access device. Respondent State of West Virginia, by counsel Shannon Frederick Kiser, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On July 2, 2015, petitioner and his son, J. L.[1], were present at the home of Tracy McCauley ("the decedent") located in Hedgesville, West Virginia. After they left, at approximately 7:00 p.m., the decedent's sister discovered the decedent's dead body bound with cables and lying under a sheet in the living room of her home.

Lt. Brendan Hall of the Berkeley County Sheriff's Department arrived at the residence and conducted the criminal investigation. Lt. Hall described the decedent as "hogtied" with various power and audio visual cords. The decedent's purse was found in the living room, and officers also observed "a lot of" empty beer cans throughout the home.

Lt. Hall proceeded to speak with a Mr. Tomberlin and Jay Kiker, who were identified as two potential witnesses. Mr. Tomberlin and Mr. Kiker told Lt. Hall that petitioner had called

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.,* 235 W. Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.,* 190 W. Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.,* 183 W. Va. 641, 398 S.E.2d 123 (1990).

them earlier that evening and asked Mr. Tomberlin to take him and his son to Frederick, Maryland. In the early morning hours of July 3, 2015, petitioner and his son were arrested in Frederick, Maryland. Frederick City Police found a debit card and EBT card with the decedent's name, and $502.80 in cash in petitioner's front shirt pocket. The Frederick Police officer also documented "pockmarks," or scratches, on petitioner's forehead and left hand. These injuries were photographed.

A review of the decedent's bank records revealed that four transactions were completed using the decedent's debit card following her death: a $600 cash withdrawal in Martinsburg, West Virginia, a $200 cash withdrawal at an ATM in Frederick, an $80 withdrawal at an ATM in Frederick, and a $1.50 transaction at a vending machine in Frederick. Police also collected fingernail clippings and a DNA sample from the decedent, petitioner, and his son. The fingernail clippings later revealed a positive DNA match between petitioner's DNA and the DNA recovered from the decedent's left hand.

A Berkeley County Grand Jury indicted petitioner for the offenses of murder, felony murder, first degree robbery, assault during the commission of a felony, and three counts of fraudulent use of an access device. Petitioner was arraigned in February of 2016. Due to the State's inability to find witnesses, the matter was continued, without objection from petitioner, to August 29, 2016. The State filed a second motion to continue in August of 2016, which was granted by the circuit court, and the matter was continued to November 15, 2016. The State filed a third motion to continue on November 7, 2016, citing its inability to obtain subpoenas for out-of-state witnesses. The circuit court granted that motion, and rescheduled the matter for January 24, 2017. The State filed a fourth motion to continue the trial on January 5, 2017, stating that the fingernail scrapings had not yet been tested by the State Police lab. Petitioner objected to the motion to continue. The circuit court denied the State's motion.

On January 17, 2017, at the pre-trial hearing, the State informed petitioner that the Marshall University Forensic Center was able to test the fingernail clippings, and that it would immediately disclose any results to petitioner. Petitioner moved to exclude the evidence, arguing that the evidence was disclosed late, and that the matter was scheduled for trial within seven days. Following a brief recess, petitioner moved for a continuance of the trial, requesting the opportunity to review the newly disclosed evidence, and seek an expert opinion. The circuit court granted the motion, and rescheduled the trial for April 25, 2017. Prior to trial, the State dismissed the murder and first degree robbery allegations, and chose to proceed on a theory of felony murder.

At trial, the State presented the testimony of the officers who conducted the investigation, Deputy Jason Wolfe, and Lt. Hall. The State also introduced the testimony of Christina Church Way, who was the sister of the decedent, and who testified to discovering the body. Other witnesses testifying for the State include Stacie Osborne, the decedent's neighbor, who testified that she saw two men outside of the decedent's town house at approximately 4:30 p.m. on the day she died, July 2, 2015. Richard Watson testified that he saw the decedent, petitioner, and petitioner's son on the back-deck of the town house on the day she died. Kaitlin Shanahan testified that on the day of the decedent' death, she saw two men exit her back door between 7:00 and 7:30 p.m. Edward Wilson testified that he met with petitioner at the decedent's home on July

2, 2015, between 1:30 and 2:00 p.m., that he did not observe any scratches on the petitioner and that he agreed to purchase two bus tickets for petitioner and his son. Sara Hicks, a financial records custodian, testified that the decedent received a social security payment of $1,060 on July 2, 2015. Ms. Hicks also testified regarding the ATM transactions that occurred after her death. Officer Brian Cosgray of the Frederick, Maryland Police Department, testified that he recovered the decedent's debit and EBT cards and cash from petitioner when he performed a pat-down search. Other officers testified to petitioner's arrest, and to the presence of abrasions or pock marks on petitioner's face.

The State also introduced the testimony of James Lucas. Mr. Lucas testified that while he was incarcerated with petitioner in Frederick County, Maryland, petitioner told him that he was staying with the decedent in Hedgesville, and that, before her death, while the two were drinking he asked to borrow $200 from the decedent. According to Mr. Lucas, when the decedent refused, petitioner hogtied her and choked her. Mr. Lucas testified that petitioner told him that he tied her up with cords from her television, and that he and his son then got a ride from a friend to Maryland. Lucas testified that petitioner paid Mr. Kiker and Mr. Tomberlin $100 for the ride, and that petitioner had scratches that he said came from the struggle with decedent. Mr. Lucas testified further that he came forward because he believed petitioner did not have to kill the decedent, and petitioner was unconcerned that he killed a woman in front of his son. At the time of his testimony, Mr. Lucas was incarcerated for first degree assault.

The medical examiner, Dr. Joseph TelTondo, testified that the cause of death was asphyxiation. Mary Fannin, a DNA analyst with Marshal University Forensic Science, testified that she analyzed the decedent's fingernail clippings from her left and right hands and that petitioner's DNA was found in the clippings from the decedent's left hand. Following the State's case-in-chief, petitioner made a motion for judgment of acquittal, which was denied.

Petitioner sought to introduce the evidence of three witnesses, including the testimony of Lt. Hall. Petitioner wished to introduce hearsay evidence regarding statements made to Lt. Hall by petitioner's son, J.L., namely, that J.L. knew the decedent's pin number. The circuit court ruled that petitioner had objected to other hearsay testimony from Lt. Hall, and explained that if petitioner sought to introduce that testimony, that he would open the door to allow Lt. Hall to testify to other hearsay statements made by Mr. Kiker and Mr. Tomberlin. As a result of the circuit court's ruling, petitioner did not call Lt. Hall in his case-in-chief.

Petitioner called an officer to testify that one witness told him that three individuals were on the decedent's porch on the day she died. Petitioner also called a detective with the Berkeley County Sheriff's Department, who testified that petitioner used the decedent's debit card to make purchases at 7-Eleven on July 1, 2015. Petitioner did not testify on his own behalf.

Following a three-day trial, petitioner was convicted of felony murder, first degree robbery, assault during the commission of a felony, and three counts of fraudulent use of an access device. The circuit court sentenced petitioner to life with mercy for his felony murder conviction; not less than two years, nor more than ten years for his conviction of assault during the commission of a felony; and three terms of ten years for his convictions of fraudulent use of an access device. Petitioner now appeals his convictions.

On appeal, petitioner asserts three assignments of error. Petitioner complains that the circuit court erred in denying petitioner's motion to exclude DNA evidence that was disclosed by the State one week prior to trial; that the circuit court erred in an evidentiary ruling regarding hearsay testimony; and that the circuit court erred in failing to direct a verdict in favor of petitioner.

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000). In addition,

> [g]enerally, findings of fact are reviewed for clear error and conclusions of law are reviewed *de novo*. However, ostensible findings of fact, which entail the application of law or constitute legal judgments which transcend ordinary factual determinations, must be reviewed *de novo*. The sufficiency of the information presented at trial to support a finding that a constitutional predicate has been satisfied presents a question of law.

Syl. Pt. 1, *State ex rel. Cooper v. Caperton*, 196 W. Va. 208, 470 S.E.2d 162 (1996). With these standards in mind, we review petitioner's assignments of error.

Petitioner first two assignments of error relate to the circuit court's evidentiary rulings. "A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 11, *State v. White*, 228 W. Va. 530, 722 S.E.2d 566 (2011). Petitioner complains that the circuit court erred in admitting DNA evidence that was disclosed to petitioner one week before trial, and in refusing to allow him to present hearsay testimony without allowing the State to present hearsay testimony in kind. Regarding the DNA evidence, petitioner asserts that the circuit court improperly denied his motion to exclude the evidence because the State violated the discovery deadlines by providing the results of the DNA test one week before trial. Petitioner argues that, pursuant to Rule 16(d)(2) of the West Virginia Rules of Criminal Procedure,

> [i]f at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances. The court may specify the time, place and manner of making the discovery and inspection and may prescribe such terms and conditions as are just.

Petitioner asserts that the State was in possession of the evidence for eighteen months prior to its disclosure to the defense, and argues that the late disclosure clearly prejudiced the defense by hampering petitioner's trial strategy and the preparation of his case. We disagree and find the

actions of the trial court to be appropriate. "[A] continuance is the preferred response to a discovery violation where bad faith is not found . . . ." *State ex rel. Rusen v. Hill*, 193 W. Va. 133, 141, 454 S.E.2d 427, 435 (1994). Here, petitioner does not allege or present evidence that the disclosure was made in bad faith.

Further, in response to petitioner's objection, the trial court gave petitioner the option of going forward with the trial as scheduled, or granting a continuance to petitioner in order to allow petitioner to engage in an independent investigation of the evidence. According to syllabus point two of *Rusen*,

> [t]he traditional appellate standard for determining prejudice for discovery violations under Rule 16 of the West Virginia Rules of Criminal Procedure involves a two-pronged analysis: (1) did the non-disclosure surprise the defendant on a material fact, and (2) did it hamper the preparation and presentation of the defendant's case.

Applying these standards, it is clear that the defendant was not prejudiced by the late disclosure of the evidence. Petitioner was aware of the DNA evidence that was collected on July 2, 2015. Although petitioner knew this evidence was potentially exculpatory, he did not move to have the evidence tested until the State presented its findings, one week before trial. Despite petitioner's failure to seek to have the evidence tested, the trial court attempted to remedy any dilemma caused by the disclosure by offering to grant a continuance to allow petitioner to hire his own expert to examine the evidence. Consequently, we find no abuse of discretion.

Petitioner also complains that the trial court improperly ruled that petitioner could not present hearsay evidence. Petitioner asserts that he wanted to elicit hearsay testimony from Lt. Hall regarding his interview of J.L. Petitioner asserts that he believed that the State would call J.L. to testify, and when the State did not call him as a witness during the State's case-in-chief, it was a complete surprise to petitioner. Petitioner explained his strategy to the trial court, and the trial court ruled that if petitioner inquired regarding the hearsay testimony, the State would be allowed to do the same. We initially note that petitioner had the ability to subpoena the witness, and secure his testimony for trial, but failed to do so. Further, Petitioner failed to object to this ruling at trial, and as such, we decline to consider this assignment of error.

> "'One of the most familiar procedural rubrics in the administration of justice is the rule that the failure of a litigant to assert a right in the trial court likely will result' in the imposition of a procedural bar to an appeal of that issue." *Miller,* 194 W.Va. at 17, 459 S.E.2d at 128, *quoting United States v. Calverley*, 37 F.3d 160, 162 (5th Cir.1994) (en banc), *cert. denied*, --- U.S. ---, 115 S.Ct. 1266, 131 L.Ed.2d 145 (1995). Our cases consistently have demonstrated that, in general, the law ministers to the vigilant, not to those who sleep on their rights. Recently, we stated in *State ex rel. Cooper v. Caperton,* 196 W.Va. 208, 216, 470 S.E.2d 162, 170 (1996): "The rule in West Virginia is that parties must speak clearly in the circuit court, on pain that, if they forget their lines, they will likely be bound forever to hold their peace." (Citation omitted). When a litigant deems himself or herself aggrieved by what he or she considers to be an important occurrence in the

course of a trial or an erroneous ruling by a trial court, he or she ordinarily must object then and there or forfeit any right to complain at a later time.

*State v. LaRock*, 196 W. Va. 294, 316, 470 S.E.2d 613, 635 (1996). As a result, we find that petitioner's argument lacks merit and decline to reverse on this ground.

Finally, petitioner asserts that the trial court erred in denying his motion for judgment of acquittal. Regarding sufficiency of the evidence claims, this Court has held that,

> [t]he function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

In addition,

> [a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

*Id.*, Syl. Pt. 3, 194 W.Va. at 663, 461 S.E.2d at 169.

Petitioner complains that the State's witnesses were not credible; that the State failed to prove the elements of robbery; and that the remaining evidence was merely circumstantial and, therefore, insufficient to sustain a conviction. We disagree. The evidence at trial revealed that petitioner was with the decedent the day of the murder, and admitted that, after the decedent refused to give petitioner money, he hogtied, and choked her until she died. Several witnesses testified that they saw petitioner at the decedent's home at various times on the day she died. Witnesses stated that petitioner had scratches on his body the day of the murder. Further, petitioner was found in possession of the decedent's debit card and a large amount of cash, while bank records revealed a number of withdrawals from the decedent's account, after her death. Finally, petitioner's DNA was found in fingernail scrapings taken from the decedent. As a result, we find the trial court did not err in denying petitioner's motion for judgment of acquittal and decline to reverse the trial court on that ground.

6

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:**  June 8, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker

7