STATE OF WEST VIRGINIA

*v.*

DAVID LEE GRIMM

(No. 14756)

Decided September 23, 1980.

*Hiehle, Golden & Kiger, William E. Kiger and Richard A. Bush,* for appellant.

*Chauncey H. Browning,* Attorney General, *David P. Cleek,* Assistant Attorney General, for appellee.

CAPLAN, JUSTICE:

The appellant, David Lee Grimm, was indicted for the murder of Charles Hardman by the Grand Jury attending the October 1969 term of the Circuit Court of Wood County. He was first tried under the indictment in May, 1970, the trial resulting in a verdict of guilty of murder of the first degree, with a recommendation of mercy. The conviction was affirmed in *State v. Grimm,* 156 W.Va. 615, 195 S.E.2d 637 (1973). In February, 1978, the appellant filed a petition for a writ of habeas corpus in the Circuit Court of Wood County and was granted a new trial. The second trial also resulted in a verdict of guilty of murder of the first degree, with a recommendation of mercy. From that conviction, the appellant prosecutes this appeal.

The evidence tends to show the following account of events. In the early morning hours of August 20, 1969 the appellant, after having frequented the Club Ada Bar and Tap in Parkersburg the evening before, returned to the bar dressed in military fatigues and carrying a rifle. At about 3:00 a.m. the appellant threw a tear gas grenade into the interior of the bar through a small uncovered peep hole in the front door. After the tear gas grenade exploded Charles Hardman, the bar owner, William Plant, and John Simons, ran out the front door of the bar. The appellant fired at them with a high powered rifle, killing Hardman and Plant, and wounding Simons.

The appellant was seen immediately after the shootings near the bar, shouting and spinning around with

his rifle overhead. He then started to "march" away from the bar and began running down an alley toward his car. Two bank couriers returning to Parkersburg in connection with their jobs observed the appellant jump into his car. The appellant noticed the men, got out of his car and fired twice at their car.

The appellant was next observed by an employee of a local plant. The employee testified that the appellant stated "I'll bet I've already killed four or five, and now I'm going to kill you." The appellant fired his rifle, wounding the man in the neck.

The appellant was also observed by two brothers delivering papers that morning. They testified that the appellant stated to them that "he didn't shoot bad people ... or he didn't shoot little kids, he only shot bad people and niggers ..." The appellant then proceeded on his way home.

Upon his arrival at home, the appellant and his wife drove to a small stream and together threw the rifle he had been carrying into the water. They then returned to their home. Upon arrest the following morning the appellant indicated he was not aware of any wrongdoing.

The State called two witnesses to establish ill-will on behalf of the appellant towards Charles Hardman, the owner of the bar, which evidence was contradicted by the appellant's evidence. The only defense interposed was insanity. Based upon expert and lay testimony, the appellant contended that the source or causal factor of his illness was his experience in the Viet Nam war. In an effort to establish this defense, twenty-one witnesses were called by the appellant to testify either as to his actions on the morning of the shooting or his conduct prior to and after the day of the shooting. Included were seven expert witnesses, six of whom testified that they believed that the appellant was insane at the time of the offense, that he was a paranoid schizophrenic and that he was unable to conform his conduct to the requirements of the law.

Several of the appellant's relatives testified as to a notable change in the appellant's behavior after his return from service in the Viet Nam war in August, 1968. The evidence indicates that he had nightmares during which he would scream and thrash about in bed, re-enacted his war experiences by dressing in military fatigues, and drank in excess upon return.

In this appeal the appellant advances and argues nine assignments of error. Consolidated, they are:

(1) Improperly instructing the jury on the insanity defense;

(2) Admitting evidence not disclosed by the prosecution upon the appellant's discovery motions;

(3) Allowing the prosecutor to conduct discovery without notice to and in the absence of the defendant;

(4) Failing to direct a verdict of not guilty by reason of insanity;

(5) Failing to declare a mistrial based upon prosecutorial misconduct in closing argument; and,
( 6) Admitting prior testimony without laying a proper foundation.

The appellant argues that the court erred in giving State's Instruction No. 1-A. Specific objections to the giving of this instruction were noted at trial and the assignment of error was again raised in the appellant's motion for a new trial. The instruction reads:

> [E]very man is presumed to be sane and to be free of such mental defect or disease causing him to lack the capacity either to appreciate the wrongfulness of his act or to conform his conduct to the requirements of law until the contrary is proved by a preponderance of the evidence to the satisfaction of the jury. In that regard, the Court further instructs the jury that a plea of not guilty by reason of insanity is an affirmative defense and the defendant has the burden of proof

on the issue of insanity and must prove such insanity by a preponderance of the evidence.

In *State v. Kirtley*, 162 W.Va. 249, 252 S.E.2d 374 (1979) we noted that the prosecution does not have to initially disprove beyond a reasonable doubt affirmative defenses to a particular crime. Relying on *Patterson v. New York*, 432 U.S. 197, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977) we determined that the Due Process Clause does not require that a state refrain from allocating to the defendant the initial burden of introducing some evidence as to his affirmative defense. There is a certain latitude for states to set their own standards on proof of affirmative defenses.

In *Edwards v. Leverette*, 163 W.Va. 571, 258 S.E.2d 436 (1979) we found that the majority view is that there exists in the trial of an accused a presumption of sanity. If the accused offers some evidence that he was insane at the time of the offense, the presumption disappears and the burden is on the prosecution to prove beyond a reasonable doubt that the defendant was sane at the time of the offense. The following guidelines, set forth in *Collins v. State of Tennessee*, 506 S.W.2d 179 (Tenn. 1973) were approved and recommended:

> When an accused is relying upon the defense of insanity at the time of the crime charged, the jury should be instructed (1) that there is a presumption the accused was sane at that time, (2) that the burden is upon him to show that he was then insane, (3) that if any evidence was introduced by him or by the State fairly raising doubt upon the issue of his sanity at that time, the presumption of sanity ceases to exist, (4) that the State then has the burden to establish the sanity of the accused beyond a reasonable doubt, and (5) that if the whole proof upon that issue leaves the jury with a reasonable doubt as to the defendant's sanity at that time the jury must accord him the benefit of that doubt and acquit him.

"The purpose of the rule is to correlate the State's burden of proof beyond a reasonable doubt to all the facts

necessary to establish the defendant's culpability. These facts include not only the essential elements of the offense charged, but also a negation beyond a reasonable doubt of those defenses which, if shown, would constitute an absolute bar to conviction or justification for the crime." *State v. Milam*, 163 W.Va. 752, 260 S.E.2d 295 (1979).

Thus, once any evidence is introduced fairly raising doubt upon the issue of the defendant's sanity at the time of the act, the prosecution must prove beyond a reasonable doubt that the defendant was sane at the time of the offense. Using this standard, we agree that State's Instruction 1-A did not properly set forth the law. The instruction focused on the defendant's initial burden to produce some evidence of insanity, and failed to state that once this was done, the State was required to disprove the defense beyond a reasonable doubt. Furthermore, the instruction required the defendant initially to prove the defense by a preponderance of the evidence. Under the standard we have applied it is sufficient if the evidence fairly raises doubt about the defendant's sanity at the time of the offense.

*Edwards* recognized that the rule relating to the burden of proof of insanity does not rise to a constitutional level. Consequently, full retroactivity was not accorded to that decision in *State v. Milam, supra*. The standards set forth in *Edwards* were, however, applied in *Milam*, since the point was properly raised at the trial and preserved on appeal.

Accordingly, since the issue was properly raised at trial and preserved on appeal, we apply *Edwards* to this case. The giving of an improper insanity defense instruction prejudiced the defendant's theory of the case and constituted reversible error.

The appellant's counsel filed a request for a bill of particulars specifically requesting copies of all oral interviews or interrogations of the defendant which had been reduced to written form. This motion was granted by the circuit court. In response to the court order re-

quiring production, the prosecution indicated that the State was not in possession of any such statements. At trial the State, on rebuttal, introduced a booking report taken shortly after the appellant's arrest the morning following the incident. The exhibit was read to the jury and reads as follows:

> Interrogated by: L.C. Gibson. Place: Detective Bureau. Date and Time: 8-20-69 7:25 a.m. Number 12,206, underlined. Parkersburg Police Department [sic] Personal Interrogation Record. Detective Bureau, Case No. Name David Lee Grimm. Address: 1002 Lakeview Drive, City. The word Pinky, underlined. Alias or Nickname No. read and write: Yes. Date of Birth, Aug. 17, 1947. Col. W. Height 5' 10, Weight 125. Hair Brn. Eyes, Ble., Sex M. Glasses, No. Complexion Lt. Mustache, Yes. Build, Thin. scars is circled, Tattoos, Needlemarks. 2" Rt. knee. Birthplace, Parkersburg. Right or Left Handed: Right. Shoe Size: 8-1/2. Car: 64 Pontiac, Lt. Ble. Driver's License: W.Va. Operators. Marital Status: Marr. Armed Forces Serial No. 2090512. Years of Schooling: 10, Last School Attended: PHS. Place of Employment: Amax Corp., Washington, W. Va. (check background). Previous Employment. Location. City, Social Security No. Mother: Jessie Louise Grimm, Address: 19th St., Phone No. Father: Leonard L. Grimm, 19th St. Sisters: Jackeline Cain, Address: Camden Ave., Address, Age. Sisters Elaine Casto, Rt. 2, Lubeck—Margaret L. Jenks, Newton Connecticut. Brothers: John L. Grimm. U.S. Army. Brothers: Dwight E. Grimm, Hawaii, Brothers: Paul D. Grimm, 19th St. Spouse: Carolyn (19) 1002 Lakeview Drive. Children: No. There is also numerous lines for Children, name, address and age, and Charge, Associates and previous address. On the back side, On Parole or Probation, blank. Parole or Probation Officer, blank. Period, Blank. Charge, Blank. Remarks: Arrested—Drunk—Pksbg. —State Police.

This document was never timely given to the appellant to inspect or copy even though the appellant had made motions for discovery.

In *State v. Cowan,* 156 W.Va. 827, 197 S.E.2d 641 (1973) we dealt with the question of the prosecutor's failure to comply with court-ordered discovery and the use of such nonproduced material at trial. There, the prosecutor obtained a letter during the course of the trial written by the defendant, but did not make it available to defense counsel although a motion had been made and granted under our pre-trial criminal discovery statute. *W.Va. Code,* 1931, 62-1B-2, as amended. The court noted that *Brady v. Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) and its progeny make it constitutionally mandatory that the prosecution advise the defense of evidence in its possession which might be favorable or exculpatory to the defendant. Since the material in *Cowan* was not exculpatory, this Court noted that the *Brady* line of decisions was not directly applicable. The Court used our criminal discovery statute to set the standard that where a discovery motion is granted and the prosecutor fails to comply, prejudicial error may result. The Court said:

> The issue of prosecutorial non-compliance with a pre-trial discovery order should not ... be determined on the basis of the type of evidence withheld by the prosecution. Whether the failure to disclose is a fatal non-compliance with a pre-trial order depends on its prejudicial effect on the preparation and presentation of the defendant's case. In this connection, it has been held and it appears to be a sound rule that the value of evidence which the defendant has requested to inspect is not for the prosecutor to decide, but rather is a question for the judgment of the defense under the exercise of proper discretion by the court. People v. Allen, 47 I11. 2d 57, 264 N.E. 2d 184.

See also *State v. Milam,* 163 W.Va. 752, 260 S.E.2d 295 (1979); *State v. Trail,* 163 W.Va. 352, 255 S.E.2d 900 (1979); *State v. Stewart,* 161 W.Va. 127, 239 S.E.2d 777, (1977) and *Wilhelm v. Whyte,* 161 W. Va. 67, 239 S.E.2d 735 (1977).

The *Cowan* Court also relied on *State v. Price*, 100 W.Va. 699, 131 S.E. 710 (1926) although *Price* dealt neither with the right of a defendant for pre-trial discovery nor with the question of whether a prosecutor complied with a pre-trial discovery order. The principle announced and applied was:

> Where a party or his counsel are taken by surprise, whether by fraud or accident, on a material point or circumstance which could not reasonably have been anticipated, and when want of skill, care or attention cannot be justly imputed and injustice has been done, a new trial will be granted.

Thus, once a trial court grants a pre-trial discovery motion requiring the prosecution to disclose evidence in its possession, non-disclosure by the prosecution is fatal to the prosecution's case where the non-disclosure is prejudicial. The non-disclosure is prejudicial where the defense is surprised on a material issue and where the failure to make the disclosure hampers the preparation and presentation of the defendant's case.

The appellant argues that his entire insanity defense was prejudiced due to the fact that this booking report was not produced for him to inspect and copy. He asserts that all the preparation for this case was based upon the assumption that he was incoherent and irrational from the time of his arrest until after he was committed to jail. All of his expert witnesses were so advised and examined the appellant on this basis. The appellant contends that he was advised by his counsel not to testify in his own behalf because it was believed that there were no written statements that could be used against him to show that he was not incoherent and irrational following his arrest.

We find that this non-disclosure was prejudicial to the defendant's case and constitutes reversible error. The appellant interposed insanity as his only defense. The booking report, taken approximately forty-five minutes following the appellant's arrest the morning after the incident, was introduced to show the appellant's appar-

ent ability within hours after the crime to answer questions and behave in a coherent manner. This evidence was not given to the appellant's expert witnesses in their assessment of his ability to know the nature and consequences of his act and conform his conduct to the law at the time of the crime. Furthermore, as stated in the affidavit attached to the appellant's motion for a new trial additional testimony would have been presented if the appellant had known of the existence of this exhibit. Counsel asserts that the appellant would have been advised to testify in his own behalf if he had known of the existence of the report. It appears that defense counsel was surprised at the introduction of this report. The report was prejudicial to the defense of insanity, and was used as rebuttal evidence to disclaim the appellant's insanity-defense evidence. The surprise use of the report prejudiced the defendant's preparation for trial and constitutes reversible error.

We have considered the other assignments and find them to be without merit. The appellant's right to a fair trial was not affected by the motions for and issuance of subpoenas duces tecum in the appellant's absence; the court did not err in refusing to direct a verdict of not guilty by reason of insanity since cross-examination of the appellant's expert witnesses and the state's rebuttal evidence was sufficient for the jury to find the appellant sane at the time of the offense; the state made a proper showing of unavailability to set a foundation for the introduction of prior testimony; and the court did not err in finding that the prosecutor, in closing argument, did not improperly comment on the defendant's failure to testify.

In view of the foregoing, the judgment of the Circuit Court of Wood County is reversed and the case is remanded for a new trial.

*Reversed and remanded.*