## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 18-0749** (Morgan County 18-F-28)

**Robert Francis Rumble,**
**Defendant Below, Petitioner**

**FILED**

**September 3, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Robert Francis Rumble, by counsel Tracy Weese, appeals the August 15, 2018, order of the Circuit Court of Morgan County sentencing him to an indeterminate four-to-fifteen-year term of incarceration. The State of West Virginia, by counsel Caleb A. Ellis, filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in permitting the State's use of certain evidence, denying his motion for a new trial, and in imposing an excessive and unduly harsh sentence.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In November of 2017, the victim, Ms. Davis, returned from work to find the door in her garage ajar, and she called 911. Without entering the home, she called for her Boston Terrier, Dakota, but he did not come. After Corporal Smith of the West Virginia State Police arrived on the scene, Ms. Davis surveyed the home and learned that Dakota was in fact missing, along with some of his clothing. Ms. Davis noted that a glass pane in the backdoor was broken and left open. She also discovered that the security cameras outside of the home were damaged or missing, the digital video recorder ("DVR") for those devices was missing, and her computer tablet was gone. However, several other valuable items were not taken from the home.

Corporal Smith asked Ms. Davis if she had any idea who may have broken into her home and taken the items, and she suggested that petitioner may have done so. Ms. Davis dated petitioner for eleven years and they had lived together in that home. However, the relationship deteriorated, and, in March of 2016, Ms. Davis was granted a domestic violence protective order against

1

petitioner. Ms. Davis reported that petitioner lived in a shed or garage about a mile and a half from her home. Corporal Smith located the residence, but petitioner was not there.

The next day, Corporal Smith, accompanied by Sergeant Joseph B. Flanigan, also of the West Virginia State Police, met with petitioner at his home. Corporal Smith advised petitioner that he was a suspect in the burglary of Ms. Davis's home and petitioner began to laugh. Corporal Smith further advised petitioner that the dog Dakota was missing, and petitioner said spontaneously, "I did it and I did it just to spite her." Petitioner then stated, "you can't prove it." During questioning, petitioner stated that Dakota had just shown up at his door and was safe at a home in Pennsylvania. Petitioner complained about Ms. Davis, stating that Dakota was his dog and that she had caused Dakota to be injured.[1] Petitioner also consented to a search of his home, but none of Ms. Davis's items were found. The following day, petitioner brought a photograph of Dakota to the State Police barracks in order to prove that the dog was safe. At petitioner's behest, Corporal Smith had a phone conversation with a person who claimed to have Dakota in her possession. At this point, Corporal Smith informed petitioner that he would be filing criminal charges. In January of 2018, petitioner was indicted on one count of burglary, one count of petit larceny, one count of destruction of property, and one count of violation of a domestic violence protective order.

Petitioner was also subject to proceedings in the Family Court of Morgan County regarding his violation of the domestic violence protective order. During those proceedings, which were held after the alleged burglary in November of 2017, petitioner testified that he knew the whereabouts of Dakota and reaffirmed that the dog was safe. Ultimately, the family court found that petitioner had violated the domestic violence protective order by entering Ms. Davis's residence and removing property from within. The family court further ordered petitioner to return the dog Dakota to Ms. Davis.[2]

In May of 2018, the State disclosed the final family court order and the video recording of the family court proceedings, five days prior to a previously scheduled pretrial hearing in petitioner's criminal matter.[3] At the pretrial hearing, petitioner objected to the timing of the disclosure. The State argued that the circuit court had not set a discovery schedule and further asserted that the video would be used for impeachment purposes only. Petitioner withdrew his objection to the video recording based on the State's reported intention. The parties litigated petitioner's motion to suppress his noncustodial statements to law enforcement, which the circuit court denied. Finally, the parties addressed a pending plea offer on the record, which petitioner rejected.

Petitioner's jury trial began on June 6, 2018. Following jury selection, the State advised that it had reconsidered its use of the video recording of the family court proceedings and would be

---

[1]Sometime before November of 2017, Dakota was hit by a truck and one of his legs was amputated as a result.

[2]On December 9th, 2017, petitioner returned Dakota to Ms. Davis with the assistance of the State Police.

[3]According to the record, this video was disclosed to petitioner as soon as it was received by the State.

introducing that evidence in its case-in-chief. The State argued that petitioner's statements in the video supported the anticipated testimony of Corporal Smith, which would show that petitioner knew the location of Dakota after the dog went missing.[4] The State explained that certain irrelevant or prejudicial portions of the nineteen-minute-long video would be muted for petitioner's benefit. Although petitioner conceded he had viewed the video in its entirety, he objected to the State's use of the video in its case-in-chief on the basis of surprise. The circuit court ordered that the State inform petitioner which portions of the video would be played for the jury prior to the lunch recess and that petitioner would be granted that time to review the video. The circuit court reasoned that petitioner had access to the video and that he would be given a "fair amount of time over lunchtime to – or additional time if . . . need[ed]" to review the portions proposed for disclosure. Petitioner reviewed the portions of video at issue and did not request any additional time to review the video.

During its case-in-chief, the State called Ms. Davis, Corporal Smith, and Sergeant Flanigan to testify. Critically, Corporal Smith testified that petitioner stated that he "did it, and did it just to spite" Ms. Davis and further admitted that he knew the whereabouts and wellbeing of Dakota the day after the dog's disappearance. This testimony was corroborated by Sergeant Flanigan. A clerk for the Morgan County Family Court authenticated the family court video recording of the domestic violence proceedings, and the relevant portions of the video were played for the jury. Finally, a third State Police trooper testified that he was present when petitioner returned Dakota to Ms. Davis at the State Police barracks. Petitioner did not testify and did not present any witnesses. Following closing arguments, the jury returned a guilty verdict on all four counts. Petitioner filed a motion for a new trial based, in part, on the use of the family court video. The motion alleged that the State surprised him with the introduction of this evidence.

In August of 2018, the circuit court held a hearing and denied petitioner's motion for a new trial on the basis that petitioner was granted an opportunity to review the selected portions of the video and had not objected to any of the particular portions that were introduced. The circuit court then proceeded to sentencing and, ultimately, sentenced petitioner to three one-year terms of incarceration for destruction of property, petit larceny, and violation of a domestic violence protective order as well as a one-to-fifteen-year term of incarceration for burglary. The circuit court ordered that these terms be served consecutively, which resulted in an aggregate four-to-fifteen-year term of incarceration. Petitioner now appeals the circuit court's August 15, 2018, sentencing order.

On appeal, petitioner argues that the circuit court erred in ruling that the family court recording was admissible in the State's case-in-chief and erred in denying his motion for a new trial based on this evidence. Petitioner argues that the State's last-minute disclosure of its intent to use the family court video in its case-in-chief constitutes a trial by ambush and surprise. According to petitioner, the late disclosure threw his decision of whether to testify at trial "into disarray." Petitioner further argues that the State's late disclosure to include the video in its case-in-chief affected his opportunity for plea bargaining. We have previously set forth the following standard of review:

---

[4]On June 5th, 2018, petitioner moved for a continuance of the jury trial based on Corporal Smith's failure to "record or preserve" petitioner's inculpatory statements, which violated petitioner's due process rights. The circuit court denied this motion.

3

In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. Pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000). Further, "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998).

This Court has explained that

"[w]hen a trial court grants a pre-trial discovery motion requiring the prosecution to disclose evidence in its possession, non-disclosure by the prosecution is fatal to its case where such non-disclosure is prejudicial. The non-disclosure is prejudicial where the defense is surprised on a material issue and where the failure to make the disclosure hampers the preparation and presentation of the defendant's case." Syllabus Point 2, *State v. Grimm*, 165 W.Va. 547, 270 S.E.2d 173 (1980).

Syl. Pt. 2, *State v. Miller*, 178 W. Va. 618, 363 S.E.2d 504 (1987). This Court has further explained that

"[t]he traditional appellate standard for determining prejudice for discovery violations under Rule 16 of the West Virginia Rules of Criminal Procedure involves a two-pronged analysis: (1) did the non-disclosure surprise the defendant on a material fact, and (2) did it hamper the preparation and presentation of the defendant's case." Syllabus Point 2, *State ex rel. Rusen v. Hill*, 193 W.Va. 133, 454 S.E.2d 427 (1994).

Syl. Pt. 1, *State v. Adkins*, 223 W. Va. 838, 679 S.E.2d 670 (2009).

Here, petitioner fails to show that the State's late disclosure of the family court video for use in its case-in-chief either surprised him as to a material fact or hampered in the preparation of his case. First, the video did not present new evidence as to a material fact. As petitioner acknowledged in his motion for a new trial, his statements in the recorded family court proceeding were cumulative to those that he made to law enforcement during their investigation. Petitioner was well aware that the State intended to present evidence that he knew the whereabouts of Dakota and was up to date on the dog's wellbeing. The video simply added an additional source of this information to bolster the anticipated testimony of the State's witnesses. Clearly, petitioner was not surprised as to a material fact.

Second, petitioner fails to enunciate how his trial preparation was hindered, except that the State's late disclosure may have changed his decision to testify. As mentioned above, petitioner

was fully aware of the State's intention to present evidence that petitioner knew the whereabouts and wellbeing of Dakota through his statements to law enforcement, and the family court video was additional evidence to the same effect. Petitioner's assertion that he may have testified despite the family court video is also unpersuasive as the State's original intention for the video was as rebuttal or impeachment evidence. Petitioner knew that any testimony inconsistent with his family court testimony would easily be impeached by this video.[5] Based on petitioner's failure to show that he was prejudiced by the State's late disclosure of the evidence in question, we find he is entitled to no relief on appeal.

Petitioner also challenges the circuit court's imposition of a four-to-fifteen-year term of incarceration for his convictions. In regard to sentencing orders, we have previously held that

> "'[t]he Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands.' Syllabus point 1, in part, *State v. Lucas,* 201 W.Va. 271, 496 S.E.2d 221 (1997)." Syllabus Point 1, *State v. Booth,* 224 W.Va. 307, 685 S.E.2d 701 (2009).

Syl. Pt. 1, *State v. Kilmer*, 240 W. Va. 185, 808 S.E.2d 867 (2017). Additionally, we have consistently held that "[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." Syl. Pt. 4, *State v. Goodnight*, 169 W. Va. 366, 287 S.E.2d 504 (1982).

Critical to this analysis, we note that petitioner was sentenced within the statutory limits for his crimes and that he has acknowledged the same on appeal.[6] Rather, petitioner argues that his sentence is excessive and unduly harsh considering the circumstances. According to petitioner, the circuit court's imposition of consecutive maximum sentences for all four crimes implies that it considered an impermissible factor at sentencing, but he does not enunciate what that impermissible factor may have been. Petitioner argues that, based on evidence of limited destruction and theft of

---

[5]Petitioner briefly mentions that the State's late disclosure of the video evidence affected his ability to effectively plea bargain but does not provide any legal authority in support of this position. We note generally that "[t]here is no absolute right under either the West Virginia or the United States Constitutions to plea bargain" and find petitioner is entitled to no relief in this regard. Syl. Pt. 2, in part, *State ex rel. Brewer v. Starcher*, 195 W. Va. 185, 465 S.E.2d 185 (1995).

[6]A person found guilty of burglary "shall be imprisoned in a state correctional facility for not less than one nor more than 15 years." W. Va. Code § 61-3-11(a). A person found guilty of the misdemeanor charge of destruction of property "shall be fined not more than $500, or confined in the county or regional jail not more than one year, or both fined and imprisoned." W. Va. Code § 61-3-30(a). A person found guilty of misdemeanor petit larceny "shall be confined in jail for a term not to exceed one year or fined not to exceed $2,500, or both, in the discretion of the court." W. Va. § 61-3-13(b). Finally, a person found guilty of violation of a domestic violence protective order entered under West Virginia Code § 48-27-403 "shall be incarcerated in the county jail for not less than ninety days nor more than one year or fined not less than $2,000 nor more than $5,000, or both." W. Va. Code § 61-2-9A(c).

property, the circumstances of his crimes were "hardly heinous" and did not warrant the ultimate sentence. We have held that

> "Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality principle: 'Penalties shall be proportioned to the character and degree of the offence.'" Syllabus Point 8, *State v. Vance*, [164 W. Va. 216], 262 S.E.2d 423 (1980).

Syl. Pt. 3, *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981). Further,

> "[w]hile our constitutional proportionality standards theoretically can apply to any criminal sentence, they are basically applicable to those sentences where there is either no fixed maximum set by statute or where there is a life recidivist sentence." Syllabus point 4, *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981).

Syl. Pt. 2, *State v. Patrick C.*, -- W. Va. -- , 843 S.E.2d 510 (2020). We find petitioner's sentence is not unduly harsh or excessive as it is within the statutory limits for the crimes for which he was convicted. To the extent that petitioner argues that we reconsider the above cited legal authority, we decline. Additionally, petitioner's vague argument that the circuit court "must have relied upon some impermissible or subjective factor" fully ignores substantial factors in support of his sentence that are present in the record. For example, petitioner does not acknowledge the effect that his crimes had on the victim. In the victim's impact statement, she explained that she did not feel safe in her own home: "I block the doors with furniture[;] when I come home from anywhere[,] I search my home[;] I don't open windows or blinds[;] I carry a weapon with me everywhere I go." While awaiting the jury trial, petitioner was admitted to bond, and the victim stated that he was seen "once by a neighbor and four times by myself driving by my home very slowly." In the commission of his crimes, petitioner utilized intimate knowledge of the victim's home, such as the location of her security cameras and DVR device, to render her protections meaningless. Moreover, petitioner did not express any remorse for his crimes and, in fact, portrayed himself to be victimized by the victim's behavior. These factors fully support the circuit court's final sentence. Petitioner is entitled to no relief on appeal.

For the foregoing reasons, the circuit court's August 15, 2018, sentencing order is hereby affirmed.

Affirmed.

**ISSUED**: September 3, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison