**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 22-0190** (Putnam County CC-40-2019-F-139)

**Michael J.,**
**Defendant Below, Petitioner**

**MEMORANDUM DECISION**

Petitioner appeals the circuit court's February 23, 2022, sentencing order following his convictions for seventeen counts of sexual abuse by a parent, guardian, custodian, or other person in a position of trust; three counts of causing a minor to engage in sexually explicit conduct for photographing; one count of retaliation; one count of soliciting a minor via computer; and one count of attempting to cause to be sent material depicting minors engaged in sexually explicit conduct.[1] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In 2019, petitioner was charged with twenty-seven crimes, most of which were sex crimes against minor children. His ten-day trial was held in 2021, and the jury found him guilty of twenty-four of the twenty-seven crimes charged.[2] Petitioner was found guilty of sexually abusing his foster child J.S. multiple times and causing him to engage in sexually explicit conduct for photographing. He was found guilty of sexually abusing his foster child M.S. multiple times, causing M.S. to engage in sexually explicit conduct for photographing, and retaliating against M.S. by transferring M.S.'s money from a bank account M.S. and petitioner shared to an account owned by only petitioner due to M.S.'s involvement in proceedings against

---

[1] Petitioner appears by Kerry A. Nessel and Todd R. Meadows, and the State appears by Attorney General Patrick Morrisey and Assistant Attorney General Katherine M. Smith. We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[2] Petitioner was acquitted of charges of sexual abuse by a parent, guardian, custodian, or other person in a position of trust and causing a minor to engage in sexually explicit conduct for photographing related to a former foster child, A.W.

1

petitioner. Another victim, E.K., was managed by petitioner in his modeling pursuits, and petitioner assisted him with his homeschooling. Petitioner was convicted of sexually abusing E.K. multiple times and causing him to engage in sexually explicit conduct for photographing. Finally, petitioner was convicted of soliciting a minor, E.S., via computer and attempting to cause to be sent material depicting minors engaged in sexually explicit conduct. E.S. was a friend and teammate of petitioner's foster children victims. Petitioner was sentenced for these crimes and then resentenced on February 23, 2022.[3] He now appeals.

Petitioner first argues that the circuit court should have granted his motions for judgment of acquittal made during trial and post-trial because the evidence was insufficient to find that he "abused any of the foster children beyond a reasonable doubt."[4] Petitioner does not argue that the evidence was insufficient on any particular element the State bore the burden of proving. Rather, to support his claim, he highlights evidence adduced at trial that was favorable to him, asserts that the evidence was "overwhelmingly in support of [his] innocence," and states that "the inferences created from the evidence demonstrated reasonable doubt." In other words, the success of petitioner's claim hinges on this Court reweighing the evidence and making determinations on witness credibility that run counter to the jury's own assessment of the evidence and credibility. But even in this Court's de novo review of a circuit court's denial of a motion for judgment of acquittal based upon the sufficiency of the evidence, *State v. Juntilla*, 227 W. Va. 492, 497, 711 S.E.2d 562, 567 (2011) (citation omitted), "we will not weigh evidence or determine credibility." *State v. Guthrie*, 194 W. Va. 657, 669, 461 S.E.2d 163, 175 (1995). Instead, "all inferences and credibility assessments that the jury might have drawn [must be credited] in favor of the prosecution," and "a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *Id.* at 663, 461 S.E.2d at 169, Syl. Pt. 3, in part. Petitioner does not argue that the record contains no evidence from which the jury could have found him guilty beyond a reasonable doubt. Nevertheless, we find that the record contains more than sufficient evidence of petitioner's guilt. Each foster child petitioner was found to have sexually abused— who was unquestionably a child under his "care, custody or control" as specified in West Virginia Code § 61-8D-5(a)—testified that petitioner touched the child's penis, often in the shower, during the timeframes set forth in the indictment. In addition to the children's testimony,

---

[3] Petitioner was sentenced to the statutorily prescribed indeterminate sentences for his convictions for sexual abuse by a parent, guardian, custodian, or other person in a position of trust; retaliation; soliciting a minor via computer; and attempting to cause to be sent material depicting minors engaged in sexually explicit conduct. For each of his convictions for causing a minor to engage in sexually explicit conduct for photographing, petitioner was sentenced to a determinate ten-year term of incarceration. The court ordered that these sentences be served in mix of concurrent and consecutive terms.

[4] Petitioner provided no greater specificity of the convictions he is challenging. By phrasing his claim in this manner, he does not appear to be challenging his conviction for retaliation, nor does he appear to be challenging his convictions related to children he did not foster, E.K. and E.S.

the jury was shown numerous text messages between petitioner and M.S. wherein M.S. references having to shower with petitioner in exchange for permission to see friends or his girlfriend, apologizes for not showering with petitioner, and apologizes for not "get[ting] off with you, sir." J.S., too, in response to petitioner seeking to "have a civil conversation," texted petitioner, "You should have thought about that before you touched me. I told you to stop and that I don't like it, but you kept touching me." Regarding petitioner's convictions for causing a minor to engage in sexually explicit conduct for photographing, his foster children testified that petitioner repeatedly asked them to send him pictures of their penises, typically over an application that automatically erases pictures after a set length of time, in exchange for privileges or gifts. It cannot be said that there is no evidence to support these convictions, so the court did not err in denying his motions for judgment of acquittal.

Petitioner next claims that the State committed a discovery violation in failing to extract data from the victims' cellular telephones. Petitioner argues that the victims "volunteered" their phones but that the State failed to perform data extractions, "[h]aving not seized the devices." Petitioner states that he requested "any and all statements, reports, tangible items and all evidence in the State's possession," as permitted under Rule 16(a)(1)(C) of the West Virginia Rules of Criminal Procedure, and he argues that the State's failure to produce the requested evidence prejudiced him because the data pulled from the devices "could have possibly bolstered his defense." Rule 16(a)(1)(C) authorizes discovery of "books, papers, documents, photographs, tangible objects, buildings or places . . . which are *within the possession, custody and control of the state*." (Emphasis added.) We have held that this Rule "limits a defendant's discovery of documents and tangible objects to those which are *within the possession, custody, and control of the State*." Syl. Pt. 7, in part, *State v. Murry*, 180 W. Va. 41, 375 S.E.2d 405 (1988) (emphasis added). As petitioner recognizes, however, the State did not seize, and therefore did not possess, the victims' cell phones or other electronic devices. As the devices were not seized, no data extraction could have been performed that would have generated a subsequent report. Consequently, there was nothing to produce, and there is no merit to petitioner's claim of a discovery violation. *See id.* at 50, 375 S.E.2d at 414 ("[I]t is necessary that the State first have custody or control of documents before a duty to disclose them arises.").

Finally, petitioner argues that the State violated the duties imposed by *Brady v. Maryland*, 373 U.S. 83 (1963), and committed another discovery violation by failing to produce the forensic interviews of three individuals who petitioner previously fostered but who did not testify at trial. Petitioner argues that he became aware of the existence of these interviews post-trial, upon receipt of his presentence investigation report, which made fleeting reference to them. Although petitioner does not describe the content of these interviews, he maintains that the "only pragmatic conclusion" is that they "contained exculpatory statements that would be fatal to the State's case and benefit [p]etitioner." To establish a denial of due process under *Brady* and *State v. Hatfield*, 169 W. Va. 191, 286 S.E.2d 402 (1982), West Virginia's counterpart to *Brady*, petitioner needed to have established three things: "(1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must have been material, i.e., it must have prejudiced the defense at trial." Syl. Pt. 2, in part, *State v. Youngblood*, 221 W. Va. 20, 650 S.E.2d 119 (2007). Without having described the content of these interviews, however, petitioner has not shown that the evidence was favorable or material. Accordingly, he

3

has failed to demonstrate any due process violation under *Brady* and/or *Hatfield*. Likewise, assuming without deciding that the nondisclosure amounted to a discovery violation, petitioner has failed to demonstrate reversible error. The content of these interviews—of witnesses who did not testify at trial—remains unknown, so petitioner has failed to show that he was surprised on a material issue or that the preparation and presentation of his case were hampered.[5] *See* Syl. Pt. 2, *State v. Miller*, 178 W. Va. 618, 363 S.E.2d 504 (1987) ("When a trial court grants a pre-trial discovery motion requiring the prosecution to disclose evidence in its possession, non-disclosure by the prosecution is fatal to its case where such non-disclosure is prejudicial. The non-disclosure is prejudicial where the defense is surprised on a material issue and where the failure to make the disclosure hampers the preparation and presentation of the defendant's case.").

       For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** May 8, 2023

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

Wooton, Justice, concurring:

       I agree with the majority's affirmance of petitioner Michael J.'s convictions and sentence. I write separately to offer guidance in regard to petitioner's assigned error that the State failed to provide relevant *Brady*[6] forensic interviews of three individuals who lived in petitioner's home, which interviews petitioner asked for in his motion for pre-trial discovery. Also, embedded in this assigned error is petitioner's argument that the State violated Rule 16 of the West Virginia

---

[5] Petitioner raises one additional assignment of error, claiming that the cumulative effect of the aforementioned alleged errors deprived him of a fair trial. But the "[c]umulative error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors." *State v. Knuckles*, 196 W. Va. 416, 426, 473 S.E.2d 131, 141 (1996). Having failed to establish any error, petitioner has not established cumulative error.

[6] *See Brady v. Maryland*, 373 U.S. 83 (1963) (requiring disclosure by the State of exculpatory or impeachment evidence).

Rules of Criminal Procedure in not producing these forensic interviews pre-trial.[7] Had this argument been better developed below, this Court would have been able to fully examine this alleged error. Because that did not occur in this case, I respectfully concur with the majority's memorandum decision affirming petitioner's conviction and sentence.

Prior to the sentencing hearing, which occurred months after petitioner's trial, petitioner learned for the first time from information contained in the pre-sentence investigation ("PSI") report that three individuals who fostered with petitioner – C.B., J.M., and T.M – were forensically interviewed. The identity of these individuals was disclosed to petitioner by the State in its second supplemental list of potential trial witnesses, but the State never produced the forensic interviews for these particular individuals to petitioner in response to his discovery request.

This Court has stated that

> [u]nder Rule 16(a)(2) of the West Virginia Rules of Criminal Procedure, "reports, memoranda, or other internal official documents made by the attorney for the State or other state officials in connection with the investigation or prosecution of the case, or of statements made by State witnesses or prospective State

---

[7] Rule 16 pertains to pretrial discovery and inspection of evidence by both the State and the Defendant. This rule requires the following:

> Upon request of the defendant, the state shall furnish to the defendant a written list of names and addresses of all state witnesses whom the attorney for the state intends to call in the presentation of the case in chief, together with any record of prior convictions of any such witnesses which is within the knowledge of the state. When a request for discovery of the names and addresses of witnesses has been made by a defendant, the state may be allowed to perpetuate the testimony of such witnesses in accordance with the provisions of Rule 15.

> (2) *Information Not Subject to Disclosure.* Except as provided in paragraphs (A), (B), (D) and (E) of subdivision (a)(1), this rule does not authorize the discovery or inspection of reports, memoranda or other internal official documents made by the attorney for the state or other state officials in connection with the investigation or prosecution of the case, or of statements made by state witnesses or prospective state witnesses except as provided in Rule 26.2.

W. Va. R. Crim. P. 16(a)(1)(F)-(a)(2).

witnesses" are not discoverable prior to trial "except as provided in Rule 26.2." In *State v. Audia*, 171 W.Va. 568, 578 n.12, 301 S.E.2d 199, 210 n.12, *cert. denied*, 464 U.S. 934, 104 S.Ct. 338, 78 L.Ed.2d 307 (1983), we observed that Rule 16(a)(2) "protects police reports from disclosure during discovery."

Rule 26.2, which parallels the federal rule, is discussed at some length in *State v. Watson*, 173 W.Va. 553, 318 S.E.2d 603 (1984). In *Watson*, we explained that under Rule 26.2, once a State's witness has testified, the defendant has the right to obtain a copy of any statements made by that witness and we quoted from 2 C. Wright, Federal Practice & Procedure § 438 at 598 (2d ed.1982): "Rule 26.2, like the statute it has replaced, creates no right to production of statements of witnesses until the witness has testified on direct examination."

*State v. Miller*, 175 W. Va. 616, 626, 336 S.E.2d 910, 920 (1985). Critically, none of the three individuals whose forensic interviews are in issue were called as witnesses by the State at petitioner's trial. Therefore, the State did not violate Rule 16 simply because it did not produce the forensic interviews in response to petitioner's discovery request.[8]

Petitioner also argues that the forensic interviews contained exculpatory evidence which would have required disclosure according to *Brady*. In support of this argument, petitioner argues:

Common sense dictates that had these three (3) individuals had inculpatory evidence against Petitioner, they would have been

---

[8] Petitioner relies on syllabus point two of *State v. Grimm*, 165 W. Va. 547, 270 S.E.2d 173 (1980), to support his argument that Rule 16 was violated. In *Grimm*, we held that

[w]hen a trial court grants a pre-trial discovery motion requiring the prosecution to disclose evidence in its possession, non-disclosure by the prosecution is fatal to its case where such non-disclosure is prejudicial. The non-disclosure is prejudicial where the defense is surprised on a material issue and where the failure to make the disclosure hampers the preparation and presentation of the defendant's case.

165 W. Va. at 547, 270 S.E.2d at 174, Syl. Pt. 2. Here, the facts are readily distinguishable from those in *Grimm* where the discovery at issue there pertained to "all oral interviews or interrogations of the defendant which had been reduced to written form" and the State failed to produce a booking report in its possession that was taken shortly after the defendant's arrest. *Id*. at 552-53, 270 S.E.2d at 176-77.

called to testify at both the Rule 404(b) hearing in July, 2020, and, most importantly, the trial in this matter. The only pragmatic conclusion was the three (3) forensic evaluations contained exculpatory statements that would be fatal to the State's case and benefit Petitioner. To that end, the State committed reversable [sic] error in not disclosing this evidence and, therefore, this matter should be reversed and remanded to the circuit court for a new trial.

This Court has held that the burden is on petitioner to establish the

> three components of a constitutional due process violation under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982): (1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must have been material, i.e., it must have prejudiced the defense at trial.

Syl. Pt. 2, *State v. Youngblood*, 221 W. Va. 20, 650 S.E.2d 119 (2007). In order to show that the evidence at issue – the forensic interviews – was favorable, exculpatory evidence, petitioner, at a minimum, needed to file a motion before the circuit court seeking an order directing the State to produce those interviews in order to ascertain whether petitioner's claim of exculpatory evidence was viable. The filing of such a motion would have allowed the development of the record in regard to the interviews and may have properly included the circuit court examining the interviews in camera. This action would have provided a record so that this Court could have reviewed the claimed error; however, petitioner did not develop the record on this issue. Instead, petitioner asks this Court simply to conclude that the interviews contained exculpatory evidence, which conclusion, devoid of any supporting evidence, this Court cannot make.

Because petitioner cannot meet his burden of demonstrating the three components needed to establish a *Brady* violation pertaining to the three forensic interviews, this Court properly affirms his conviction.

For all the foregoing reasons, I respectfully concur.

7